Michael C. TIBBETTS, Respondent,

v.

LEECH LAKE RESERVATION BUSINESS COMMITTEE,
(uninsured), Relator,

Minnesota Department of Human Services, intervenor, State Treasurer, Custodian of the Special Compensation Fund, Respondents.

No. CO–85–1863.

Supreme Court of Minnesota.

Dec. 26, 1986.

Harold R. Finn, Jr., Walker, for Leech Lake RBC.

Jacob E. Forsman, Dept. of Labor & Industry, St. Paul, for Michael C. Tibbetts.

Hubert H. Humphrey, III, Atty. Gen., James Alexander, Sp. Asst., St. Paul, for Dept. of Human Services.

Hubert H. Humphrey, III, Atty. Gen., Stephen B. Masten, Thomas G. Lockhart, Sp. Assts., St. Paul, for Special Fund.

KELLEY, Justice

Respondent Michael C. Tibbetts, a member of the Leech Lake Band of the Chippewa Indian Tribe, commenced this action against his employer, the Leech Lake Reservation Business Committee (the governing body for the Leech Lake Band) and the custodian of the Special Compensation Fund to recover Minnesota workers' compensation benefits for injuries allegedly sustained during the course of his employment by the Band. Although recognizing that the Leech Lake Reservation Business Committee (hereinafter RBC) enjoyed sovereign immunity, the Workers' Compensation Court of Appeals held the immunity had been waived, and that, therefore, the Leech Lake RBC was subject to the Minnesota Workers' Compensation Act. We reverse.[1]

The parties have stipulated to the basic facts necessary for consideration of RBC's claim of sovereign immunity and the claim of Respondent Tibbetts that the immunity has been waived. Tibbetts claims that on November 30, 1978, while employed by the Leech Lake Band on reservation lands, he sustained back injuries. He alleges temporary total disability and an undetermined amount of permanent partial disability arising out of his claimed work-related injuries.[2] The Leech Lake RBC is a duly constituted and federally recognized tribal governing body for the Leech Lake Reservation. Tibbetts' principal place of employment by the Leech Lake RBC was within the boundaries of the Leech Lake Reservation. Prior to October 24, 1978, the Leech Lake RBC had carried workers' compensation insurance. On that date the policy was cancelled by the insurer for nonpayment of premiums. On November 30, 1978, the date of Tibbetts' alleged accident, the Leech Lake RBC had no workers' compensation insurance in force. Later, in December 1978, the Leech Lake RBC did acquire assigned risk workers' compensation coverage, but that insurance did not provide coverage for work-related accidents happening prior to the inception of the policy. Eight and one-half months after Tibbetts' alleged work accident, the Leech Lake RBC adopted Ordinance No. 80–1 entitled "Re: Insurance and Sovereign Immunity." The part of that ordinance relative to this controversy reads:

(3) The Leech Lake Band of Chippewa Indians herein waives its sovereign immunity as to all workmen's compensation claims for those employees whom the Leech Lake Band of Chippewa Indians has employed and for which it carries workmen's compensation insurance coverage. It does not waive its sovereign

---

1. The alleged accident giving rise to respondent's claim occurred in 1978. At the initial hearing on the workers' compensation claim, RBC moved for dismissal of the petition claiming sovereign immunity and lack of subject matter jurisdiction. Further hearings were continued pending the outcome of a declaratory judgment action in district court seeking a declaration that the Minnesota Chippewa Tribe is not involuntarily subject to the Minnesota Workers' Compensation law, and that the Bands of the Tribe have sovereign immunity against claims brought under the workers' compensation statute. The district court dismissed the declaratory judgment action. This court reversed and remanded for trial. *Minnesota Chippewa Tribe v. State of Minnesota*, 339 N.W.2d 55 (1983). After remand, in 1984 the parties stipulated to

dismissal of the declaratory judgment action and agreed to an expedited hearing on legal issues before a judge of the Office of Administrative Hearings (OAH), Workers' Compensation Division. The compensation judge denied the Band's dismissal motion. After affirmance by the Workers' Compensation Court of Appeals, we granted a writ of certiorari to the employer. Meanwhile, respondent Minnesota Department of Human Services intervened to recover medical payments made on behalf of Tibbetts following his injury.

2. The intervenor Minnesota Department of Human Services has paid medical and subsistence expenses in excess of $22,000.

immunity as to independent contractors and it alone, shall have the authority to determine, through its Reservation Business Committee, as to which persons are its employees.

Because of the procedural moves set forth in abbreviated terms in footnote 1 herein, the motion to dismiss made by the Leech Lake RBC in late 1979 was not heard until mid–1984. The administrative compensation judge denied the dismissal motion and ordered a hearing on the merits of Tibbetts' claim. The compensation judge ruled that Minnesota had subject matter jurisdiction based on (1) Public Law 280, codified at 18 U.S.C. § 1162 and 28 U.S.C. 1360 (that certain states including Minnesota have been granted jurisdiction over Indian tort and contract claims); (2) 40 U.S.C. 290 (state workers' compensation acts to apply to federal lands); and (3) Minn.Stat. §§ 176.001–.85 (1984 & Supp. 1986) (the Minnesota Workers' Compensation Act). The compensation judge further ruled the Workers' Compensation Division had personal jurisdiction based upon the Leech Lake RBC waiver of sovereign immunity contained in Ordinance 80–1 as well as the Chippewa Tribe Ordinance 6. Finally, the compensation judge found the Band to be an employer within the definition of Minn.Stat. § 176.011, subd. 10 because Indian tribes or bands were not specifically excluded from the statute. In affirming, the Workers' Compensation Court of Appeals adopted the administrative judge's memorandum as its own.

If the Band is immune from suits of this kind, the dismissal motion of the Leech Lake RBC in this case should have been granted *unless* the immunity was properly waived. Therefore, we proceed first to consider the ruling of the courts below that the defense of sovereign immunity was unavailable to the Leech Lake RBC in this workers' compensation action.

■ Since the earliest times of our nation's court history, Indian tribes have been recognized as being independent political communities possessing natural rights in conducting self governance. *Worcester v.*

*Georgia,* 6 Pet. 515, 559, 8 L.Ed. 483, 500 (1832). Absent waiver by the Tribe or the enactment of statutes by the Congress clearly and effectively indicating an intention to abolish the immunity, the federal courts have recognized that the independent tribal political units possess the common law immunity from suit historically enjoyed by sovereign states. *See, e.g., Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978); *Puyallup Tribe v. Washington Department of Game,* 433 U.S. 165, 172, 97 S.Ct. 2616, 2621, 53 L.Ed.2d 667 (1977); *United States v. Oregon,* 657 F.2d 1009, 1013 (9th Cir.1982). Likewise, this court has acknowledged that traditionally Indian tribes are generally immune from suit. *Duluth Lumber & Plywood Co. v. Delta Development, Inc.,* 281 N.W.2d 377, 383 (Minn.1979). No one disputes that the Leech Lake RBC, as the governing body of the Leech Lake Band of Chippewa Indians, also is generally immune from a suit of this nature unless immunity has been waived.

■ However, the immunity enjoyed by Indian tribes is not absolute. Clearly Congress may waive tribal immunity provided that Congress, by unequivocal expression, clearly indicates its intent to do so. *Santa Clara Pueblo,* 436 U.S. at 58, 98 S.Ct. at 1677; *United States v. Oregon,* 657 F.2d at 1013; *Chemehuevi Indian Tribe v. California State Board of Education,* 492 F.Supp. 55, 58–59 (N.D.Cal.1979). In addition, an Indian tribe may take actions that amount to a waiver of its general right to defensively assert sovereign immunity. *United States v. Oregon,* 657 F.2d at 1013–14.

■ The compensation judge and the Workers' Compensation Court of Appeals agreed with Respondent Tibbetts' contention that by enactment of Public Law 280 (codified at 18 U.S.C. § 1162 and 28 U.S.C. § 1360), Congress waived the Leech Lake Band's right to defensively assert sovereign immunity. The Leech Lake RBC responds here to those holdings below by arguing that Public Law 280 is merely a limited conferral upon the courts of Min-

nesota of forum jurisdiction over private parties, one or both of which may be tribal members, but confers upon the state no general civil regulatory powers over the Chippewa Tribe or the Leech Lake Band RBC. It relies upon *Bryan v. Itasca County*, 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976) where the Supreme Court of the United States, in reversing this court's holding in *Bryan v. Itasca Co.*, 303 Minn. 395, 228 N.W.2d 249 (1975), reviewed the "legislative history of Public Law 280 and the application of canons of construction applicable to congressional statutes claimed to terminate Indian immunities." *Id.* 426 U.S. at 379–80, 96 S.Ct. at 2106–07. In so doing, the Court noted:

> Piecing together as best we can the sparse legislative history of § 4, [28 U.S.C. § 1360(2)] seems to have been primarily intended to redress the lack of adequate Indian forums for resolving private legal disputes between reservation Indians, and between Indians and other private citizens * * * [Further, there is] in the legislative history * * * the absence of anything remotely resembling an intention to confer general state civil regulatory control over Indian reservations.

*Id.* at 383–84, 96 S.Ct. at 383–84, 2108–09. In concluding that Public Law 280 did not subordinate tribal governments to the "full panoply of civil regulatory power" of state governments, the U.S. Supreme Court like-

wise stated "[t]he Act itself refutes such an inference: there is notably absent any conferral of state jurisdiction over the tribes themselves * * *. [I]f Congress in enacting Public Law 280 had intended to confer upon the States general civil regulatory powers * * * it would have expressly said so." *Id.* at 388–89, 390, 96 S.Ct. at 2111–12.

■ It cannot reasonably be argued that Minnesota Workmen's Compensation Act (Minn.Stat. ch. 176 (1984 & Supp.1986) is not a civil regulatory law. Obligations and liabilities are imposed upon employers and employees regulating not only the forum and its procedures, but issues of substantive law as well. Minn.Stat. ch. 176 provides for "a mutual renunciation of common law rights and defenses." Minn.Stat. § 176.001 (1984). In return for scheduled benefits for compensating employees who sustain injuries in the course of the employment relationship, the employer's liability is made substantially absolute. Chapter 176, indeed, is a civil regulatory law. Heeding the United States Supreme Court's language in *Bryan,* we hold that enactment of Public Law 280 constituted no waiver of the Leech Lake Band RBC's right to assert sovereign immunity as a defense to Tibbetts' claim.[3]

■ Tibbetts also contends that Congress has effectively waived the tribal sovereign immunity by enactment of 40 U.S.C. § 290.[4] That Act generally provides that

---

**3.** In resolving questions concerning the state's exercise of civil regulatory laws, a suggestion has been made that the Supreme Court of the United States has recently given less weight to the "back drop of tribal sovereignty" in applying a two-stage balancing test. *Rice v. Rehner,* 463 U.S. 713, 720, 103 S.Ct. 3291, 3296, 77 L.Ed.2d 961 (1983). Application of such test requires a showing of strong state interest. When the tribe has a traditional bequest of regulatory power, any repeal would require a direct and explicit order from Congress. *Id.* 103 S.Ct. at 3296. *See generally, Native American Indian Law & the Burger Court: A Shift in Judicial Methods,* 8 Hamline L.Rev. 671 (1985). Certainly, Minnesota has an interest in the regulation of the work place, and compensation of its citizen-employees for injuries sustained during the scope of employment. In our opinion, however, that interest is insufficient to overcome the strong

language used by the United States Supreme Court in *Bryan* holding that Public Law 280 confers upon the state therein denominated no general regulatory powers.

**4.** 40 U.S.C. § 290 states:

Whatsoever constituted authority of each of the several States is charged with the enforcement of and requiring compliances with the State workmen's compensation laws of said States and with the enforcement of and requiring compliance with the orders, decisions, and awards of said constituted authority of said States shall have the power and authority to apply such laws to all lands and premises owned or held by the United States of America by deed or act of cession, by purchase or otherwise, which is within the exterior boundaries of any State and to all projects, buildings, constructions, improvements, and prop-

state workers' compensation laws apply to work injuries that otherwise would not be covered by a state's workers' compensation law if the injuries occur on federal lands. No immunity, exclusion or exemption otherwise available to either an employer or an employee is terminated by the statute. That act simply cannot be read to confer upon states jurisdiction over otherwise immune or exempt parties. Not only does that result from a plain reading of the statute, but also from the act's interpretive history as made, for example, by the Solicitor of the Department of Interior who concluded that the statute was never intended to apply to Indian tribes themselves. 1 *Opinions of the Solicitor of the Department of Interior Relating to Indian Affairs 1917–1974*, 692, 1044 (1974). The sole objective of the statute was to close a gap that prevented states from exercising workers' compensation jurisdiction over work-related injury causing accidents occurring on federal lands. For example, following enactment of the statute, an Indian injured on an Indian reservation in the course of his employment by a non-Indian employer could maintain a workers' compensation action against that employer under the state's workers' compensation law, and the employer could not raise the fact the accident occurred on federal land as a defense. Additionally, courts who have addressed the issue have recognized that 40 U.S.C. § 290 was not intended to apply to Indian tribes. More than 30 years ago in *Swatzell v. Industrial Commission*, 78 Ariz. 149, 277 P.2d 244 (1954), the Supreme Court of Arizona observed that the wording of the statute failed to clearly manifest any intention to include Indian activities within its scope. Moreover, that court noted that an examination of the Senate Committee Report corroborated its conclusion:

An examination of Senate Committee Report accompanying this Act, S.R. No. 2294, 74th Congress, 2d Session, reveals that such was not the intention of the Congress. Rather, it there appears that:

The purpose of the amended bill is to fill a conspicuous gap in the workermen's compensation field by furnishing protection against death or disability to laborers and mechanics employed by contractors or other persons on Federal property. The United States Employees' Compensation Act covers only persons directly employed by the Federal Government.

*Id.* at 154, 277 P.2d at 248. More recently, the Arizona Court of Appeals in addressing the specific question here involved wrote " * * * that whatever 40 U.S.C. § 290 attempted to accomplish by making state workers' compensation laws applicable to federal enclaves, it did not have the effect of abrogating the doctrine of sovereign immunity * * *." *White Mountain Apache Tribe v. Industrial Commission of Arizona*, 144 Ariz. 129, 134, 696 P.2d 223, 228 (App.1985). We agree.

■ Respondent next asserts that the Leech Lake Band RBC by its own conduct waived the Band's sovereign immunity. In holding that the right to assert the defense of sovereign immunity has been waived, the administrative judge first examined Ordinance 6 enacted by the Minnesota Chippewa Tribe as well as Ordinance 80–1 enacted by the Leech Lake RBC. From the examination of the two ordinances, the judge concluded their enactments constituted a waiver of immunity. We do not address

erty belonging to the United States of America, which is within the exterior boundaries of any State, in the same way and to the same extent as if said premises were under the exclusive jurisdiction of the State within whose exterior boundaries such place may be.

For the purposes set out in this section, the United States of America vests in the several States within whose exterior boundaries such place may be, insofar as the enforcement of State workmen's compensation laws are affected, the right, power, and authority afore-

said: Provided, however, That by the passage of this section the United States of America in nowise relinquishes its jurisdiction for any purpose over the property named, with the exception of extending to the several States within whose exterior boundaries such place may be only the powers above enumerated relating to the enforcement of their State workmen's compensation laws as herein designated: Provided further, That nothing in this section shall be construed to modify or amend subchapter I of chapter 81 of Title 5.

the judge's analysis because it seems patently clear to us that the wording of the ordinances themselves unequivocally indicate that under the facts here existing, there has been no waiver as to this workers' compensation claim brought by Respondent Tibbetts. Ordinance 6 of the Minnesota Chippewa Tribe specifically involves traditional Indian tribal sovereign immunity. It states, "The Minnesota Chippewa Tribe has sovereign immunity and may not be sued without its consent on contract claims or tort claims * * *." However, the ordinance further addresses waiver of that immunity in workers' compensation matters:

> The Minnesota Chippewa Tribe does herein waive its sovereign immunity as to all workmens' compensation claims for those employees whom The Minnesota Chippewa Tribe has employed and for which it carries workmen's compensation insurance coverage. It does not waive its sovereign immunity as to independent contractors and it alone shall have the authority to determine through its Tribal Executive Committee as to which persons are its employees.

Without dispute at the time of respondent's alleged injury, the Tribe did not "carry" workers' compensation insurance coverage. Therefore, the asserted tribal immunity had not been waived by the Tribe. Eight months after Respondent Tibbetts' alleged work-related injury, the Leech Lake RBC enacted Ordinance 80–1, which, as previously indicated, is drafted using substantially the same language. Absolutely no evidence exists that this ordinance was intended to be retroactively applied. But even if construed to be so applied, the ordinance's specific language limits any waiver to claims "for which it carrie[d]" insurance. No insurance was "carried" on November 30, 1978. The conclusion follows that neither the Tribe nor the Band

waived the RBC's sovereign immunity by the enactment of these ordinances.[5]

Respondent Tibbetts further argues that even if the Leech Lake RBC may assert as a defense its sovereign immunity, the defense of sovereign immunity is unavailable to the Special Compensation Fund. Conversely, the Special Fund posits that it is liable only if the Leech Lake RBC is liable because any liability on the fund is strictly derivative.[6] In *St. Martin v. KLA Enterprises, Inc.*, 269 N.W.2d 59 (Minn. 1978) we held the Fund "stands in the shoes of an uninsured employer and is obligated to pay all compensation benefits due the injured employees * * * in the event the employer fails to make such payments." *Id.* at 60. Thus, it is clear the Fund's liability is derivative from that of the employer. If the employer is immune from workers' compensation liability, no benefits are due the injured employee from the Fund. On the other hand, if the employer is subject to liability but doesn't pay, the Fund has the obligation "to stand in the shoes" of the defaulting employer. In *Zak v. Gypsy*, 279 N.W.2d 60 (Minn.1979), even though at the time of the filing of the employee's workers' compensation claim, the musical combo employer(s) was out of business and unavailable to suit, we held the Fund "stood in the [combo's] shoes" because the combo during its existence was liable as an employer. *Id.* at 63–64. Contrasted to that setting, here the Leech Lake RBC was at no relevant time liable as an employer because of its sovereign immunity. Since it was never liable, therefore the Fund cannot be liable.

Finally, we reject Respondent Tibbett's contention that to deny him Special Fund coverage violates Section 1 of the 14th Amendment to the Constitution of the United States and Art. 1, § 2 of the Minnesota State Constitution—the equal protection clauses.

---

5. We do not address an issue raised by the Leech Lake RBC that it was not subject to Minn. Stat. ch. 176 because not identified as an employer subject to the Act. Our finding of sovereign immunity and non-waiver makes resolution of that issue here unnecessary.

6. The administrative judge noted the fund's liability to be derivative. She did so, however, in the context of finding the Band liable under the Minnesota Workers' Compensation law.

Tibbett's treatment is not disparate from that afforded to similarly situated persons—employees whose employers are not subject to the Workers' Compensation Act. *See, e.g.,* Minn.Stat. § 176.041. All employees of employers exempted from the Act are denied coverage from the Special Fund. Additionally we note, as conceded by Respondent Tibbetts, that neither the distinctions made by the Act nor the *de facto* distinction arising as the result of sovereign immunity are drawn upon suspect classifications. They likewise fail to create suspect classifications. Consequently, the State need only demonstrate a rational basis for its legislation.

The United States Supreme Court, in interpreting the equal protection clause in the social welfare field noted:

> This Court has consistently deferred to legislative determinations concerning the desirability of statutory classifications affecting the regulation of economic activity and the distribution of economic benefits. "If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" *Dandridge v. Williams,* 397 U.S. 471, 485 [90 S.Ct. 1153, 1161, 25 L.Ed.2d 491] (1970), *quoting Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78 [31 S.Ct 337, 340, 55 L.Ed. 369] (1911). *See also Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307 [96 S.Ct. 2562, 49 L.Ed.2d 520] (1976); *Mathews v. DeCastro,* 429 U.S. 181 [97 S.Ct. 431, 50 L.Ed.2d 389] (1976); *Jefferson v. Hackney,* 406 U.S. 535 [92 S.Ct. 1724, 32 L.Ed.2d 285] (1972).

*Idaho Department of Employment v. Smith,* 434 U.S. 100, 101, 98 S.Ct. 327, 328, 54 L.Ed.2d 324 (1977).

The Idaho case arose after the state had enacted legislation providing unemployment benefits to night school students. Such benefits were denied to day school students. In holding the Idaho scheme passed constitutional muster, the court recognized that it was rational for Idaho to conclude that daytime employment is far more plentiful than nighttime work, and, consequently, that attending school in the daytime imposes a greater restriction upon obtaining full-time employment than does attending night school.

Likewise, it was rational for the Minnesota legislature to provide for the Special Fund to fill a potential gap for protection of injured employees whose employments are "covered" by the Workers' Compensation Act, but whose employers illegally refuse or fail to comply with the Act's requirements. The statute, itself, demonstrates this intent by a provision allowing the Fund to recoup payments it makes to injured employees from the non-complying employer as well as possible punitive damages. Minn.Stat. § 176.183 (1984). The Act was not designed to afford employees scheduled benefits where injured in noncovered employment. Since the distinction between noncomplying but covered employers and noncovered employers did have a rational basis, we find no deprivation of equal protection of the laws.

Accordingly, we hold that the Leech Lake RBC was shielded from workers' compensation liability to Respondent Tibbetts by virtue of the doctrine of sovereign immunity; that the immunity was not waived either by Congress, the Chippewa Tribe or the Leech Lake Reservation Business Committee; that the Special Fund's potential liability, being derivative, is extinguished when the employer is immune from liability; and that such extinguishment does not deprive respondent of equal protection of the laws.

Reversed.