Lynn R. DIVER, et al., Appellants,

v.

Dennis J. PETERSON, individually and in his capacity as tribal attorney for the Fond du Lac Reservation, Respondent.

No. C3–94–942.

Court of Appeals of Minnesota.

Nov. 29, 1994.

Review Denied Feb. 14, 1995.

Thomas F. Sjogren, Fillenworth & Sweetland, Ltd., Duluth, for appellants.

Frank B. Yetka, Rudy, Gassert, Yetka & Doran, P.A., Cloquet, for respondent.

Considered and decided by KLAPHAKE, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

KLAPHAKE, Judge.

Appellants Lynn R. and Mary J. Diver (the Divers) brought this defamation action against respondent Dennis J. Peterson, individually and in his capacity as tribal attorney for the Fond du Lac Band of Lake Superior Chippewa (the tribe). The Divers allege that Peterson knowingly and falsely reported to the media that the tribe had fired them for stealing tribal property. The Divers claim they were actually fired because they reported to the police incidents of child sexual abuse at the tribal school where they worked. Peterson moved to dismiss the complaint for lack of subject matter jurisdiction because of the tribe's sovereign immunity. Alternatively, Peterson moved for summary judgment.

Following a hearing, the district court granted summary judgment for Peterson and dismissed the complaint with prejudice. The court concluded that it lacked jurisdiction because the complaint arose out of an intratribal matter where the tribe's sovereign immunity extended to Peterson, its attorney. We affirm.

## FACTS

In the summer of 1993, the Divers worked as custodians at the tribal school located on the reservation. The Divers were enrolled members of the tribe. Lynn Diver had previously been employed at the tribal school as a daycare worker.

According to Mary Diver's affidavit, she saw a note pad on a teacher's desk while cleaning a classroom on June 18, 1993. She noticed her nephew's name on the note pad and read the notes. Her sister Lynn Diver saw the note pad in the same location three days later and also read it. According to the Divers, the notes referred to incidents of sexual abuse involving their nephew, a student at the school.

The Divers contacted the police to report their nephew's allegation that an older student had sexually molested him. On July 21, at the request of the police, the Divers gave the notes to the police. After the Divers informed school officials of their police contacts, the school superintendent fired them for "unauthorized appropriation and dissemination of confidential records pertaining to a student at the school."

On July 29 and 30, three Duluth television stations reported Peterson's statements that the tribe had fired the Divers because they had stolen school property. The Divers claimed they first learned through the television broadcasts that tribal school officials had accused them of theft. Peterson and the tribe, on the other hand, claim that the Divers first brought the issue to the media's attention.

The following week, on August 5, a Cloquet newspaper quoted Peterson's statement that the Divers had stolen school records from a locked office and were "bootstrapping this incident to the child abuse issue in order to justify their actions." The Divers sued Peterson individually for defamation on September 7. On September 23, the tribe's gov-

erning body retroactively approved Peterson's statements on behalf of the tribe.

## ISSUES

I. Did the district court err in concluding that the Indian tribe's sovereign immunity extended to its attorney and precluded the state court's subject matter jurisdiction for a defamation suit?

II. Is a tribal attorney entitled to absolute immunity from suit for defamation for statements made in the course of his duties as the tribal spokesperson?

## ANALYSIS

### I. TRIBAL SOVEREIGN IMMUNITY

The Divers claim the district court erred in concluding that this action arises out of intratribal activities over which the tribe has sovereign immunity and for which the tribe made no express waiver of sovereign immunity. The Divers claim that the defamatory statements are actionable because they were published outside of the reservation to a non-Indian public and because state and federal laws limit the tribe's ability to authorize Peterson's defamatory statements.

■ As a federally recognized Indian tribe, the tribe has sovereign authority over intra-tribal matters. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58–59, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978) (tribal lawsuit against Indian tribe under federal Indian Civil Rights Act barred by tribe's sovereign immunity from suit).

Indian tribes are "distinct, independent, political communities, retaining their original natural rights" in matters of local self-government. Although no longer "possessed of the full attributes of sovereignty," they remain a "separate people, with the power of regulating their internal and social relations." They have power to make their own substantive law in internal matters, and to enforce that law in their own forums[.]

*Id.* at 55–56, 98 S.Ct. at 1675 (citations omitted). Tribes retain original jurisdiction over members and territory unless Congress acts to limit tribal sovereignty. *Id.* at 56, 98 S.Ct.

at 1676; *see also* 25 U.S.C.A. § 3601(6) (West Supp.1994) ("Congress and the Federal courts have repeatedly recognized tribal justice systems as the appropriate forums for the adjudication of disputes affecting personal and property rights[.]")

■ The Divers are members of the tribe and were employed as custodians in the tribal school on the reservation. The tribe has inherent sovereign authority to regulate tribal members' conduct and the tribe's employment relationship with the Divers. *See EEOC v. Fond du Lac Heavy Equip. & Constr. Co.*, 986 F.2d 246, 249 (8th Cir.1993) (dispute between tribal member and tribal employer should be resolved internally within tribe, and Age Discrimination in Employment Act does not apply absent clear and plain congressional intent); *see also Tibbetts v. Leech Lake Reservation Business Comm.*, 397 N.W.2d 883, 887–88 (Minn.1986) (tribal sovereign immunity bars application of state workers' compensation statute to tribal employer). This tribal sovereign immunity extends to individual tribal officials acting in their official capacity and within the scope of their authority. *See Davis v. Littell*, 398 F.2d 83, 84–85 (9th Cir.1968), *cert. denied*, 393 U.S. 1018, 89 S.Ct. 621, 21 L.Ed.2d 562 (1969) (tribe had sovereign immunity from suit therefore could extend absolute executive privilege to its attorney). Therefore, the Divers' recourse for the alleged torts of the tribal attorney is through tribal institutions and procedures. *See Santa Clara Pueblo*, 436 U.S. at 65, 98 S.Ct. at 1680–81 (recognizing the competence of tribal judicial process).

The district court correctly concluded that there are no facts here showing that the tribe expressly waived its sovereign immunity and consented to suit. *See Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509–10, 111 S.Ct. 905, 909, 112 L.Ed.2d 1112 (1991). A waiver of sovereign immunity " 'cannot be implied but must be unequivocally expressed.' " *Santa Clara Pueblo*, 436 U.S. at 58, 98 S.Ct. at 1677 (citations omitted). The express waiver requirement applies "irrespective of the nature of the lawsuit." *American Indian Agr. Credit Consortium, Inc. v. Standing Rock*

*Sioux Tribe,* 780 F.2d 1374, 1378 (8th Cir. 1985).

■ The Divers assert that state and federal laws apply because the publication of the defamatory statements occurred off-reservation through television and newspapers. However, tribal immunity is jurisdictional, the purpose of which is to promote the overriding federal policy of tribal self-government. Therefore, tribal sovereign immunity applies to tribal officials acting in their official capacity, even where one element of a claim occurred outside the reservation. *See also Davis,* 398 F.2d at 85 (non-Indian attorney representing tribe protected by tribal sovereign immunity).

The Divers claim that federal law limits the tribe's authority to prescribe its own members' conduct and divests the tribe of its sovereign immunity, citing Public Law 83–280 (codified at 18 U.S.C.A. § 1162 (West 1984) and 28 U.S.C.A. § 1360 (West 1993)). The two statutes give the State of Minnesota jurisdiction over criminal offenses or civil causes of action involving individual Indians. *See Tibbetts,* 397 N.W.2d at 886–87. The Supreme Court stated clearly that Public Law 83–280 was intended to supplement tribal institutions, not limit them:

> Public Law 280 certainly does not constitute a "governing Act of Congress" which validates * * * interference with tribal immunity and self-government. We have never read Pub.L. 280 to constitute a waiver of tribal sovereign immunity, nor found Pub.L. 280 to represent an abandonment of the federal interest in guarding Indian self-governance.

*Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng'g Co.,* 476 U.S. 877, 892, 106 S.Ct. 2305, 2314, 90 L.Ed.2d 881 (1986); *see also Bryan v. Itasca County, Minn.,* 426 U.S. 373, 383, 96 S.Ct. 2102, 2108, 48 L.Ed.2d 710 (1976) (Public Law 280 redresses "lack of adequate Indian forums for resolving private legal disputes between reservation Indians, and between Indians and other private citizens").

■ The district court correctly concluded that the federal statute that mandates the reporting of suspected sexual abuse to local authorities does not establish jurisdiction in state court for this defamation claim. *See* 18 U.S.C.A. § 1169 (West Supp.1994). Section 1169 makes it an offense for any child day care worker who knows or has reasonable suspicion that a child was abused in Indian country to fail to report the abuse to local authorities. 18 U.S.C.A. § 1169(a). Although section 1169 may have required Lynn Diver to report the suspected abuse, the amended complaint does not allege a violation of the statute. Therefore, we refuse to address the issue.

## II. ABSOLUTE IMMUNITY

■ Peterson argues that the doctrine of absolute immunity protects him from liability because he is a high level executive officer in the tribe. *See Carradine v. State,* 511 N.W.2d 733, 735 (Minn.1994); *see also Johnson v. Dirkswager,* 315 N.W.2d 215, 223 (Minn.1982) (high level executive officers have absolute immunity from suit for defamatory statements made in the course of their duties).

> The rationale underpinning absolute immunity is that the common good is promoted by allowing government officials to fearlessly provide and discuss information that concerns the public interest.

*Board of Regents v. Reid,* 522 N.W.2d 344 (Minn.App.1994) (citations omitted), *pet. for rev. denied* (Minn. Oct. 27, 1994). Absolute immunity protects officials who make statements which are integral to the performance of their assigned duties and which address issues of public concern. *See Dirkswager,* 315 N.W.2d at 221. The availability of absolute immunity does not depend upon the statement's truth or the speaker's intent. *Id.* at 220.

■ The district court correctly concluded that Peterson, as tribal attorney, was protected by absolute immunity when making statements to the press regarding matters involving his official duties. The position of tribal attorney falls within the executive class of officers to which absolute immunity applies. *See Davis,* 398 F.2d at 85 (where duties of tribal attorney are public and official, attorney enjoys absolute immunity); *see also Freier v. Independent Sch. Dist. No.*

*197,* 356 N.W.2d 724, 728 (Minn.App.1984) (school board members who published reasons for teacher's discharge were protected by absolute immunity). Moreover, the record supports the district court's finding that Peterson acted within the scope of his official duties as the tribal attorney because it was his duty to make public statements on internal tribal affairs, such as the reporting of child sexual abuse or the employment and termination of tribal school employees.

The Divers claim Peterson lacked absolute immunity because the tribe authorized his statements retroactively on September 23, after the lawsuit was filed. The Divers claim that the tribe's attempt to protect Peterson did not retroactively authorize him to make defamatory statements. Yet, judicial scrutiny of tribal authorization for Peterson's statements made as tribal spokesperson would defeat the purpose of absolute immunity. *See Dirkswager,* 315 N.W.2d at 220–21. Therefore, this court declines to scrutinize Peterson's or the tribe's intent.

Because we affirm the district court's rulings on the issues of sovereign immunity and absolute immunity, we need not address Peterson's claims to official or qualified immunity.

·                    **DECISION**

The district court correctly entered summary judgment in Peterson's favor as the state court lacks subject matter jurisdiction. Under the doctrine of tribal sovereign immunity, the Divers may pursue their claims against Peterson through tribal procedures. Public Law 280 has not abrogated the tribe's sovereign immunity, nor has the tribe expressly waived its sovereignty on this issue. Moreover, Peterson enjoys absolute immunity from the Divers' defamation suit because he made the allegedly defamatory statements while performing assigned duties as the tribal attorney and spokesperson, and the statements pertained to issues of public concern. Because there are no disputed issues of material fact regarding sovereign immunity and absolute immunity and because the district court correctly applied the law, we affirm

summary judgment. *See State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990).

**Affirmed.**

RANDALL, Judge dissenting.

I respectfully dissent. At this stage of the proceedings, I conclude Minnesota state courts still retain jurisdiction and thus, outright dismissal is not proper. The record does not adequately support a conclusion that the State of Minnesota lacks any and all jurisdiction, and genuine issues of material fact remain precluding summary judgment.

Indian tribes possess "the common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978). This immunity, however, is not absolute. As the supreme court observed:

Clearly Congress may waive tribal immunity provided that Congress, by unequivocal expression, clearly indicates its intent to do so.                    ·

*Tibbetts v. Leech Lake Reservation Business Comm.,* 397 N.W.2d 883, 886 (Minn.1986).

Congress stated clearly that tribal institutions are supplemented by state law, and that the state has jurisdiction over offenses committed by or against Indians in Indian country, or over civil causes of action between Indians or to which Indians are parties. *See* 18 U.S.C.A. § 1162 (West 1984) (state criminal laws) and 28 U.S.C.A. § 1360 (West 1993) (state civil laws). Where the state law is not preempted by federal law, and where the tribe does not have a tradition of self-governance on an issue, state law operates to supplement tribal law. *See County of Vilas v. Chapman,* 122 Wis.2d 211, 361 N.W.2d 699, 703 (1985) (county had jurisdiction over non-criminal traffic offense where no federal preemption and no tradition of tribal self-governance over traffic regulation).

The record is not yet sufficiently developed regarding what laws are in effect in the tribe that would control in this situation. Therefore, on this record there remains a serious issue of whether Minnesota law on defamation should supplement tribal law in this case.

The Divers correctly argue that they may have *been required* by federal law to report the incidents of sexual abuse. *See* 18 U.S.C.A. § 1169 (West 1994). Section 1169 requires child day care workers who reasonably suspect that a child was abused in Indian country to immediately report the abuse to the local child protective services agency or local law enforcement. 18 U.S.C.A. 1169(a). It is undisputed that Carlton County is the proper authority to which reports of child abuse should be made. Respondents concede that Carlton County (i.e., the State of Minnesota) and Carlton County alone has the jurisdiction to investigate alleged criminal conduct involving child abuse on the Fond du Lac reservation. In addition, respondents have to concede that Carlton County alone has the jurisdiction to investigate the allegations of theft made against appellants by respondents.

We also note that federal law limits the tribe's authority to inhibit the reporting of sexual abuse, *see* 18 U.S.C.A. § 1169(b) (supervisor or person with authority over person described in section (a)(1) who inhibits or prevents that person from making a report can be fined or imprisoned). We note that the category of those covered is extremely broad including, but not limited to, all forms of medical providers, and not just teachers and school counsellors, but teachers' aides, teachers' assistants and bus drivers. 18 U.S.C.A. § 1169(a)(1).

Respondents argue the law does not apply to the Divers because they worked as janitors. The determination of whether the Divers were acting under the statute, however, requires a factual determination of whether or not they were child care workers. Lynn Diver states that she had worked as a child day care worker. Mary Diver states that she had worked as a cook. They both state that they expected to return to their respective positions. Lynn Diver states that she believed she was required to report suspected child abuse. If the Divers can be found to be subject to the federal requirement on reporting sexual abuse, it is difficult to conclude that they do not have a right to go to court when the tribe's attorney allegedly defamed them regarding their actions in making the report.

The record is also not yet sufficiently developed to allow a determination that Peterson is a high level executive officer of the tribe such that he should be accorded absolute immunity. In *Davis v. Littell*, 398 F.2d 83, 85 (9th Cir.1968), *cert. denied*, 393 U.S. 1018, 89 S.Ct. 621, 21 L.Ed.2d 562 (Jan. 13, 1969), the Ninth Circuit concluded the tribal general counsel there qualified for absolute immunity. In that case, however, the record reflected the duties that the general counsel was to perform, such as "those functions generally required of a General Counsel's office in organizations engaged in the administration of public affairs." *Id.* Here the record does not adequately reflect the extent of Peterson's duties, and therefore summary judgment is not proper on this basis.

As to official immunity, summary judgment would not be proper because, under *Bauer v. State*, 511 N.W.2d 447, 449 (Minn. 1994), official immunity does not extend to allegedly defamatory statements. *Id.* at 449. "[E]ither the statement is true or it is not, and there is no discretionary conduct for official immunity to cover and protect." *Id.*

Under qualified immunity, genuine issues of material fact remain as to whether Peterson acted with malice. Peterson stated to the press that the Divers were fired for stealing and that criminal charges would be filed against them. According to the Divers, Peterson made this statement after he was aware that Carlton County had investigated the incident and would not be filing charges against the Divers. It is interesting to note respondent's position that to make a charge of theft against appellants they had to go to Carlton County and invoke Carlton County's and the State of Minnesota's jurisdiction. When appellants responded with this lawsuit they are arguing that the Carlton County District Court and the State of Minnesota have no jurisdiction.

Peterson argues that the Divers are raising the sex abuse reporting issue to cover up the fact that they stole school property. This argument is a smoke screen. It appears rather that the accusation of theft against appellants by respondents may be

being used to divert attention away from appellants' claim that sexual abuse of minors may not have been reported. The theft issue raised by respondents is inconsequential. Respondents claim that appellants "stole" a piece of school paper with notes on it is hardly actionable, as the Carlton County attorney's refusal to charge attests.

The seminal issue revolves around the Divers reporting alleged sexual abuse of minors. This is where I respectfully differ with the trial court and the majority. The trial court's Memorandum of law which was made a part of the trial court Order states:

> This action arose out of activities that are strictly intra-tribal when the Fond du Lac Tribe decided to fire the Plaintiffs from their jobs as custodians at the tribal school. After the Plaintiffs went public with their side of the story, the tribe specifically authorized Defendant Peterson to give the reason for the firings.

I find this issue cannot be an "intra-tribal" dispute. The controlling federal law requires a reporting, not to the Fond du Lac tribal Council, but to the Carlton County attorney's office. The next issue is whether the Divers are protected from retaliation after making a report. This is not an intra-tribal dispute as the Divers protection from retaliation, if they are entitled to it, will come from a state or federal court and not from the tribal council. On the issue of their defamation lawsuit, if the tribe does not have a tradition of regulating defamation, the State of Minnesota's laws are available, and the state may have jurisdiction.

Although this action is for defamation, the issues of the report of sexual abuse and that of defamation are so intertwined that summary judgment is not proper at this stage. This is not a matter of an intra-tribal dispute. Rather, serious state and federal issues are raised as well. I disagree that dismissal or summary judgment are proper at this time.