Rodney W. SWENSON, Respondent,

v.

Michael NICKABOINE d/b/a Northland Quality Builders and SFM Mutual Insurance Company, Relators,

and

Medica Health Plans, Detroit Lakes Chiropractic, Minnesota Department of Labor and Industry/VRU, Meritcare Health System, Intervenors.

No. A10–380.

Supreme Court of Minnesota.

Feb. 2, 2011.

David C. Wulff, Law Office of David C. Wulff, Roseville, MN, for respondent.

M. Chapin Hall, Lynn, Scharfenberg & Assoc., Minneapolis, MN, for relators.

## OPINION

MEYER, Justice.

Respondent Rodney Swenson filed a workers' compensation claim over an injury he claims occurred when he was working for relator Michael Nickaboine, a Minnesota citizen and enrolled member of the Mille Lacs Band of Ojibwe (MLBO), on a casino expansion project. The casino is located on land held in trust by the federal government for the MLBO. Nickaboine and his insurer, SFM Mutual Insurance Company (collectively SFM), moved to dismiss the claim, arguing that the Office of Administrative Hearings (OAH) lacked statutory jurisdiction. The compensation judge dismissed the case for lack of jurisdiction on constitutional grounds. On appeal, the Workers' Compensation Court of Appeals (WCCA) reversed on statutory and constitutional grounds. We affirm.

Relator Michael Nickaboine is an enrolled member of the MLBO. He does not live on MLBO land. In 2004, Nickaboine began working on tribal land as a sole proprietorship doing business as "Northland Quality Builders." Nickaboine filed the appropriate paperwork for that name with the Minnesota Secretary of State and obtained a nongaming vendor license from the MLBO. From 2004 through May 30, 2007, Nickaboine's business operated exclusively on land held either by the MLBO or by the federal government in trust for the benefit of the MLBO.

In 2005, the MLBO entered into a construction contract with M.A. Mortenson Company to expand Grand Casino Hinkley, which is located on land held in trust by the federal government for the MLBO. The contract provided that Mortenson would submit itself to MLBO jurisdiction "with regard to any controversy in any way arising out of or relating to the execution or performance of [the] agreement." It further provided that the contract would be "governed, construed and enforced" according to MLBO written laws, with federal or Minnesota laws applying in the absence of written MLBO laws. Mortenson also agreed to abide by MLBO's Tribal Employment Rights Office (TERO) plan, which required that at least 50% of those working on the project, including subcontractors, be members of the MLBO or another Indian tribe.

Mortenson hired Northland Quality Builders as a subcontractor, in part to satisfy TERO requirements. In its contract with Mortenson, Northland Quality Builders agreed to abide by the requirements of the TERO compliance plan set out in Mortenson's agreement with the MLBO. That plan required approval of Mortenson's TERO liaison officer before a non-Indian could be hired. The subcontract also required Northland Quality

Builders to obtain workers' compensation insurance. It did so from co-relator SFM Mutual Insurance Company.

In early October 2006, Nickaboine and respondent Rodney Swenson, who is not a member of any Indian tribe, began discussing the possibility of Swenson working for Nickaboine on the casino expansion project. Swenson was hired at the job site on October 23, 2006. According to Swenson, he injured his back in May 2007 when he missed a step while carrying a heavy tool box down a flight of stairs.

Swenson filed a workers' compensation claim. SFM moved to dismiss the claim, arguing that the OAH had no jurisdiction under Minn.Stat. § 176.041, subd. 5a (2010). After a hearing solely on the issue of jurisdiction, the compensation judge dismissed the case. Instead of addressing SFM's statutory arguments, however, the compensation judge decided the case based primarily on principles of federal constitutional Indian law. The judge discussed two potential sources of state jurisdiction: 40 U.S.C. § 3172 (2006) and Public Law 280, *see* Pub.L. No. 83–280, 67 Stat. 589 (1953) (codified and amended at 18 U.S.C. § 1162 (2006); 28 U.S.C. § 1360 (2006)). The compensation judge concluded that neither law granted Minnesota jurisdiction over a workers' compensation claim arising from an injury on MLBO land.

Swenson appealed to the WCCA, which reversed the decision of the compensation judge. The WCCA addressed the parties' original arguments, holding that "the MLBO reservation lies within Minnesota for the purposes of Minn.Stat. § 176.041, subd. 5a, and that a work injury on the reservation is not an out-of-state injury under the workers' compensation statute." *Swenson v. Nickaboine*, No. WC09–4977, 2010 WL 431914, at *3 (Minn. WCCA Jan. 26, 2010). With respect to the compensation judge's other holdings, the WCCA held that both Public Law 280 and 40 U.S.C. § 3172 allowed Minnesota to hear the claim—writing that "a workers' compensation claim brought by an injured worker is a civil cause of action of the type contemplated by" Public Law 280, and that section 3172 applied to lands held in trust by the federal government for Indian tribes. *Id.* at *4. SFM sought certiorari review of the WCCA's decision.

Relators raise essentially three issues: (1) whether Minnesota's Workers' Compensation Act applies to employees injured on tribal land in Minnesota; (2) whether an agreement between the MLBO and its primary contractor to subject all disputes arising out of the contract to tribal jurisdiction eliminates Minnesota jurisdiction over Swenson's workers' compensation claim; and (3) whether Minnesota has jurisdiction to hear a workers' compensation dispute between a nontribal employee and an employer who is an enrolled member of the tribe, both of whom are Minnesota citizens, when the injury occurred on land held in trust for the tribe by the federal government.

## I.

■ We turn first to the question of whether Minnesota's Workers' Compensation Act applies to employees injured on tribal land. Interpretation of a statute presents a question of law, which we review de novo. *Kidwell v. Sybaritic, Inc.*, 784 N.W.2d 220, 226 (Minn.2010).

Minnesota extends application of its workers' compensation laws to any employee who sustains an injury within this state. Minn.Stat. § 176.041, subd. 4 (2010). Extraterritorial application of the Act, however, is limited: "Except as specifically provided by subdivisions 2 and 3, injuries occurring outside of this state are not subject to this chapter." Minn.Stat. § 176.041, subd. 5a (2010). The Act ap-

plies to injuries outside the state when an employee "who regularly performs the primary duties of employment within this state receives an injury while outside of this state in the employ of the same employer," *id.*, subd. 2, or when an employee hired in Minnesota by a Minnesota employer is injured while temporarily employed outside the state, *id.*, subd. 3.

SFM argues that MLBO land is outside the State of Minnesota and that Swenson's injury was therefore extraterritorial. SFM further argues that Minn.Stat. § 176.041, subd. 3, does not provide extraterritorial coverage because Nickaboine is not a "Minnesota employer" and Swenson was not hired in this state. It concedes that the Grand Casino Hinkley site is physically within Minnesota, but argues that the casino is legally outside the state because Minnesota's ability to legislate over Indian affairs is limited.

SFM cites no authority for the proposition that land held in trust by the federal government for an Indian tribe is legally outside the state for purposes of a workers' compensation statute. Ample authority shows that Indian reservations are commonly considered to be part of the states in which they are located. *See Nevada v. Hicks*, 533 U.S. 353, 361–62, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001) ("Ordinarily, it is now clear, an Indian reservation is considered part of the territory of the State." (internal quotation marks omitted)); *see also* Michael D. Oeser, *Tribal Citizen Participation in State and National Politics: Welcome Wagon or Trojan Horse?*, 36 Wm. Mitchell L.Rev. 793, 805 (2010) ("Federal and state case law assumes that reservations are part of the states in which they exist . . . although reason to doubt that conclusion exists."). In Minnesota, references to tribes' presence inside the state abound. For example, a recent case refers to the MLBO as "the only Indian tribe *in Minnesota* with

its own [Temporary Assistance for Needy Families] program." *See Greene v. Comm'r of Minn. Dep't of Human Servs.*, 755 N.W.2d 713, 718 n. 2 (Minn.2008) (emphasis added). Minnesota's statutes include references to "tribes in Minnesota" or "reservation[s] in Minnesota." *See, e.g.*, Minn.Stat. § 3.922, subd. 6 (2010) (giving the Indian Affairs Council the duty to assist with studies of services delivered to "tribes in Minnesota"); Minn.Stat. § 256.01, subd. 2(a)(7) (2010) (requiring the Commissioner of Human Services to enter into contracts with "Indian tribes with a reservation in Minnesota"); Minn. Stat. § 270C.19 (2010) (authorizing the Commissioner of Revenue to enter into an agreement with the governing body of any "Indian reservation in Minnesota.").

■ Minnesota Statutes § 176.041 does not exclude tribal land—either held directly by the tribe or, as here, held in trust by the federal government—from its coverage. Therefore, we hold that the MLBO reservation lies within Minnesota for the purposes of Minn.Stat. § 176.041, subd. 5a.

## II.

■ We next address SFM's argument that the contractual provision between the MLBO Corporate Commission and M.A. Mortenson eliminates Minnesota jurisdiction. Whether parties may alter their obligations under Minnesota's workers' compensation laws is a question of law, which we review de novo. *See Varda v. Nw. Airlines Corp.*, 692 N.W.2d 440, 444 (Minn.2005).

SFM argues that section 13.1.1 of the primary contractor's contract required the contractor and all subcontractors and subcontractors' employees to submit to tribal court jurisdiction for dispute resolution. That section reads, in relevant part, "The Contractor hereby irrevocably submits itself to the jurisdiction of the Courts of

Central Jurisdiction for the Mille Lacs Band of Ojibwe with regard to any controversy in any way arising out of or relating to the execution or performance of this Agreement."

■ Employers and employees may not contract out of the applicability of Minnesota's workers' compensation laws. "Any agreement by any employee or dependent to take as compensation an amount less than that prescribed by this chapter is void." Minn.Stat. § 176.021, subd. 4 (2010). Stated another way, any agreement to contract out of the Minnesota Act where it otherwise applies is, by statute, void. As *Larsons' Workers' Compensation* treatise explains:

> Express agreement between employer and employee that the statute of a named state shall apply is ineffective either to enlarge the applicability of that state's statute or to diminish the applicability of the statutes of other states. Whatever the rule may be as to questions involving commercial paper, interest, usury and the like, the rule in workers' compensation is dictated by the overriding consideration that compensation is not a private matter to be arranged between two parties; the public has a profound interest in the matter which cannot be altered by any individual agreements. This is most obvious when such an agreement purports to destroy jurisdiction where it otherwise exists; practically every statute has emphatic prohibitions against cutting down rights or benefits by contract.

9 Arthur Larson & Lex K. Larson, *Larsons' Workers' Compensation Law* § 143.07[1] (2010) (footnote omitted).

■ Moreover, the contract provision on which SFM relies does not apply to Swenson. The document SFM cites states that it is an agreement between the MLBO Corporate Commission and M.A. Mortenson. Respondent therefore is not bound because he is not a party to that agreement, and any such provision purporting to destroy Minnesota jurisdiction where it otherwise exists would be, by statute, invalid.

### III.

■ Having decided that Minn.Stat. § 176.041 grants the OAH authority to adjudicate a nontribal employee's claim for a work-related injury that occurs on tribal land and that Swenson's claim is not contractually excluded from Minnesota jurisdiction, we turn to the question of whether Minnesota may exercise jurisdiction over the claim. SFM argues that regardless of claimed statutory scope, Minnesota lacks jurisdiction to hear a workers' compensation claim arising out of an injury that occurred on tribal land while the employee was working for a member of the tribe. Jurisdiction is a question of law, which we review de novo. *Seehus v. Bor–Son Constr., Inc.*, 783 N.W.2d 144, 147 (Minn. 2010).

■ Congress has broad powers, described as plenary and exclusive, to regulate tribal affairs under the Indian Commerce Clause. *See* U.S. Const. art. I, § 8, cl. 3; *United States v. Lara*, 541 U.S. 193, 200, 124 S.Ct. 1628, 158 L.Ed.2d 420 (2004). Because of "[t]he unique historical origins of tribal sovereignty," *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980), and because the "policy of leaving Indians free from state jurisdiction and control is deeply rooted in the Nation's history," *Rice v. Olson*, 324 U.S. 786, 789, 65 S.Ct. 989, 89 L.Ed. 1367 (1945), states have no power in Indian country unless Congress has manifested its intent to the contrary, *McClanahan v. Ariz. State Tax Comm'n*, 411 U.S. 164, 170–71, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973).

■ Congress has enacted legislation directly applicable to this case: 40 U.S.C. § 3172, which authorizes states to exercise their workers' compensation laws over federal lands located in the state:

> The state authority charged with enforcing and requiring compliance with the state workers' compensation laws and with the orders, decisions, and awards of the authority may apply the laws to all land and premises in the State which the Federal Government owns or holds by deed or act of cession, and to all projects, buildings, constructions, improvements, and property in the State and belonging to the Government, in the same way and to the same extent as if the premises were under the exclusive jurisdiction of the State in which the land, premises, projects, buildings, constructions, improvements, or property are located.

40 U.S.C. § 3172(a). In this case, Swenson claimed to have suffered a work-related injury on land held by the federal government in trust for the MLBO. The federal government clearly "owns or holds" land it holds in trust for the MLBO, and it is a basic principle of trust law that a trustee holds legal title to trust property. *See, e.g., Watkins v. Bigelow,* 93 Minn. 210, 225, 100 N.W. 1104, 1109 (1904). By its plain language, section 3172 allows Minnesota to apply its workers' compensation laws "in the same way and to the same extent as if the premises were under the exclusive jurisdiction" of the State of Minnesota. 40 U.S.C. § 3172(a).

■ Our only previous examination of this statute was in the context of tribal sovereign immunity.[1] In *Tibbetts v. Leech Lake Reservation Business Committee,* we held that section 3172[2] did not waive the sovereign immunity that shielded the employer, an Indian tribe, from liability under Minnesota's workers' compensation laws. 397 N.W.2d 883, 888–90 (1986). We also wrote in dicta that under section 3172, "an Indian injured on an Indian reservation in the course of his employment by a non-Indian employer could maintain a workers' compensation action against that employer under the state's workers' compensation law." *Id.* at 888.

SFM argues that Nickaboine is an "Indian employer" because he is an enrolled MLBO member operating on Indian land. Swenson argues that *Tibbetts*'s reference to a "non-Indian employer" means anyone other than the band itself acting as the employer. Swenson has the better side of this argument. In *Tibbetts,* we were analyzing a question of sovereign immunity. *Id.* at 887–88. The statement about a "non-Indian employer" highlighted the difference between the statute's applicability to a sovereign—i.e., the tribe itself—and its applicability to someone who is not the tribe—i.e., a "non-Indian employer." *See id.* As used in *Tibbetts,* therefore, a "non-Indian employer" is anyone other than an Indian band or tribe acting as employer.

Other jurisdictions have held that section 3172's extension of state workers' compensation laws to federal lands includes lands held in trust for an Indian tribe. The United States Court of Appeals, in *Begay v. Kerr–McGee Corp.,* 682

**1.** Indian tribes are not subject to suit unless "Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe v. Mfg. Tech., Inc.,* 523 U.S. 751, 754, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998). The doctrine "does not immunize the individual members of the Tribe." *Puyallup Tribe, Inc. v. Dep't of*

*Game,* 433 U.S. 165, 172, 97 S.Ct. 2616, 53 L.Ed.2d 667 (1977). The parties to this case agree that Nickaboine is not entitled to sovereign immunity.

**2.** At the time *Tibbetts* was decided, the statute was codified at 40 U.S.C. § 290 (2000).

F.2d 1311, 1319 (9th Cir.1982), held that section 3172 "unambiguously" permitted application of Arizona's workers' compensation statute to injuries that employees of a nontribal-owned mining company sustained on Navajo land. State courts in Idaho and North Dakota have also held that section 3172 allows states to enforce their workers' compensation laws against enrolled Indian members operating businesses on Indian land. *See State ex rel. Indus. Comm'n v. Indian Country Enters., Inc.*, 130 Idaho 520, 944 P.2d 117, 118 (1997); *State ex rel. Workforce Safety & Ins. v. JFK Raingutters*, 733 N.W.2d 248, 253–55 (N.D.2007). We agree, and hold that section 3172 allows Minnesota to adjudicate a dispute arising out of an injury claimed to have occurred on land held by the federal government in trust for an Indian tribe.[3]

Affirmed.

GILDEA, Chief Justice (concurring).

I agree with the majority that we should affirm the WCCA, but I disagree with the majority that 40 U.S.C. § 3172 (2006) provides the Minnesota workers' compensation court with subject matter jurisdiction to resolve Swenson's claim. I write separately to explain my disagreement with the majority and the basis upon which I would affirm the WCCA.

A.

The majority holds that Minnesota had subject matter jurisdiction based on 40 U.S.C. § 3172. But we held in *Tibbetts v. Leech Lake Reservation Business Committee*, 397 N.W.2d 883, 888 (Minn.1986), that in section 3172, Congress did not subject the tribe to jurisdiction in Minnesota courts. The majority distinguishes *Tibbetts* because that case involved a workers'

compensation claim brought by a tribal member against a tribe; whereas this case involves an injured worker who is not a tribal member and an employer that is owned by a tribal member but is not a tribal corporation. But holding that Congress did not waive the sovereign immunity of the tribe in section 3172, as we did in *Tibbetts*, does not provide a basis for the majority's conclusion that Congress, in section 3172, vested subject matter jurisdiction in the state to enforce its workers' compensation laws. In my view, our discussion in *Tibbetts* supports the opposite result on the jurisdictional question.

The issue in *Tibbetts* was whether the state had jurisdiction to enforce its workers' compensation laws against an Indian tribe. The issue presented here is whether the state law can be enforced against a member of the tribe, and so the issue of tribal sovereign immunity is not raised in this case as it was in *Tibbetts*. But we must still answer the question of whether Minnesota has subject matter jurisdiction over the claims here, and as to that question, I think *Tibbetts* is quite helpful. As we noted in *Tibbetts*, "the wording of [section 3172] failed to clearly manifest any intention to include Indian activities within its scope." 397 N.W.2d at 888. I agree, and would hold that the failure of Congress to clearly indicate an intention to include Indian activities within the scope of section 3172 means that section 3172 does not provide a basis for subject matter jurisdiction here.

When Congress intends to give states jurisdiction to act relative to Indians, it does so in clear language. For example, in Public Law 280, Congress has specifically provided that the "criminal laws of [certain states or territories] shall have the same

---

**3.** Because we hold that section 3172 authorizes state jurisdiction in this matter, we do not reach the question of whether Public Law

280 would also authorize Minnesota jurisdiction.

force and effect within such Indian country as they have elsewhere within the State." 18 U.S.C. § 1162(a) (2006); *see also* 28 U.S.C. § 1360(a) (2006) (granting state jurisdiction "over civil causes of action ... [in] which Indians are parties," and providing that "civil laws of [certain states] that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere.").[1]

Congress did not use such clear language in section 3172. In fact, Indians are not even mentioned in section 3172. Based on the plain language of section 3172—which does not include any mention of Indian activities or affairs—and our analysis in *Tibbetts*, I would hold that Minnesota does not have subject matter jurisdiction under section 3172.

### B.

Nevertheless, even though in my view there is no express grant of jurisdiction, I would still conclude that Minnesota had jurisdiction to enforce its workers' compensation laws in this case. I reach this conclusion based on the preemption analysis we followed in *State v. Davis*, 773 N.W.2d 66, 69 (Minn.2009). In "[t]his analysis [we] balance[ ] the federal interests of promoting tribal sovereignty and Indian self-governance and autonomy and any state interests in order to determine whether the state law at issue may operate." *Id.; see also State v. R.M.H.*, 617 N.W.2d 55, 60 (Minn.2000) (noting that "a state may exercise jurisdiction on a tribal reservation absent express federal consent if the operation of federal law does not preempt it from doing so," and conducting preemption inquiry as a balancing of feder-al and tribal interests against state interests). When the relevant interests are balanced here, I would conclude that Minnesota's exercise of jurisdiction does not interfere with the tribal sovereignty of the MLBO.

With respect to the state interest, the injured party here is not a tribal member, but a citizen of Minnesota. Minnesota has a strong interest in ensuring that its citizens receive compensation for their injuries. *See Bigelow v. Halloran*, 313 N.W.2d 10, 12 (Minn.1981) ("[T]his court has often said that it is in the interest of this state to see that tort victims are fully compensated."); *Hague v. Allstate Ins. Co.*, 289 N.W.2d 43, 49 (Minn.1978) ("We believe that it is preferable to compensate victims of accidents to the full extent of their injuries, and we believe that is the policy adopted by the legislature."), *on reh'g*, 289 N.W.2d at 50 (Minn.1979), *aff'd*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981). This interest is reflected in the workers' compensation statute. *See* Minn. Stat. § 176.001 (2010) ("It is the intent of the legislature that chapter 176 be interpreted so as to assure the quick and efficient delivery of indemnity and medical benefits to injured workers at a reasonable cost to the employers who are subject to the provisions of this chapter.").

By contrast, the tribal interest here is not as well-defined. As the majority notes, the employer, while owned by a tribal member, is a sole proprietorship organized under Minnesota law. The tribe also does not appear to have laws regulating the area of workers' compensation. *Cf. Davis*, 773 N.W.2d at 73 (noting that federal tribal interest in self-governance "is

---

1. This provision does not provide jurisdiction in this case because we have held that the Workers' Compensation Act is not purely civil, but is civil/regulatory. *Tibbetts*, 397 N.W.2d at 887. Public Law 280 does not provide a basis for state jurisdiction if the law at issue is civil/regulatory. *See California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 211–12, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987).

strongest when the tribe regulates its own members"). Moreover, there is no evidence that enforcement of Minnesota's workers' compensation laws would interfere with any " 'source of revenue[ ] for the operation of tribal government[.]' " *Id.* at 72 (quoting *California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 218–19, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987)). Finally, enforcement of Minnesota's workers' compensation laws is not "inconsistent with federal pronouncements" on the topic of workers' compensation laws. *Id.* at 73–74.

When I balance the relative state and federal/tribal interests, I would hold that Minnesota has jurisdiction to enforce its workers' compensation laws in this case.

ANDERSON, PAUL, H., Justice (concurring).

I join in the concurrence of Chief Justice Lorie S. Gildea.

DIETZEN, Justice (concurring).

I join in the concurrence of Chief Justice Lorie S. Gildea.