STATE of Minnesota, Respondent,

v.

David Michael DAVIS, Appellant.

No. A07–36.

Supreme Court of Minnesota.

Sept. 10, 2009.

Lori Swanson, Attorney General, St. Paul, MN; and Janice S. Kolb, Mille Lacs County Attorney, Tara Ferguson Lopez, Assistant Mille Lacs County Attorney, Milaca, MN, for respondent.

Chris Allery, Anishinabe Legal Services, Cass Lake, MN, for appellant.

## OPINION

GILDEA, Justice.

The State charged appellant, David Michael Davis, with speeding and failing to provide proof that he had insurance on his vehicle. Davis moved to dismiss the charges, arguing that the district court lacked subject-matter jurisdiction. The court held that it had subject-matter jurisdiction, and the Minnesota Court of Appeals affirmed. Because we conclude that Congress has not preempted Minnesota from enforcing its traffic laws in state court under the circumstances presented here, we affirm.

On December 3, 2005, Davis was driving on State Highway 169 in Mille Lacs County, Minnesota. Joshua Kimball, an officer with the Mille Lacs Tribal Police, was on patrol in the area and observed Davis traveling at a high rate of speed. Kimball used the radar equipment in his squad car to confirm that Davis was exceeding the speed limit by approximately 15 miles per hour. Kimball activated his emergency light, but Davis continued driving. Eventually, Davis stopped his vehicle on Ataage Drive in North Kathio, Minnesota. Davis argues, and we assume for purposes of this appeal, that the area where he stopped his vehicle is land held in trust by the United States for the Mille Lacs Band of Chippewa Indians.

During the stop, Davis told Kimball that his vehicle was uninsured. Kimball also discovered that there was an outstanding warrant for Davis' arrest for a previous failure to provide proof of insurance. Kimball arrested Davis on the warrant and issued Davis a ticket for speeding and driving without proof of insurance.[1]

---

1. State law provides authority for the Mille Lacs Tribal Police to act as peace officers with the "same powers as peace officers employed by local units of government." Minn. Stat. § 626.90, subd. 3 (2008). "The Mille Lacs County attorney is responsible to prosecute or initiate petitions for any person arrest-

The Minnesota Chippewa Tribe (MCT) is a federally recognized Indian tribe with six member bands, including the Leech Lake Band and the Mille Lacs Band. Davis is an American Indian registered with the Leech Lake Band. He is not a member of the Mille Lacs Band and does not reside on the Mille Lacs Reservation. At the district court, Davis argued that the court lacked subject-matter jurisdiction because he was an Indian who committed an offense in Indian Country—the Mille Lacs Reservation—and that therefore only the tribal court had jurisdiction.

The district court denied Davis' motion, holding that under *State v. R.M.H.*, 617 N.W.2d 55 (Minn.2000), the State has jurisdiction over traffic offenses committed on Indian reservations by nonmembers of the reservation. The court of appeals affirmed on the same grounds. *State v. Davis*, No. A07–0036, 2008 WL 2726950 (Minn.App. July 15, 2008). We granted Davis' petition for review.

### I.

On appeal, Davis argues that the district court did not have jurisdiction, and that the United States Supreme Court implicitly overruled *R.M.H.* in *United States v. Lara*, 541 U.S. 193, 124 S.Ct. 1628, 158 L.Ed.2d 420 (2004). The State contends that *Lara* did not overrule *R.M.H.*, and that *R.M.H.* dictates the conclusion reached by the lower courts that the district court had jurisdiction.[2] We review issues of subject-matter jurisdiction de novo. *State v. R.M.H.*, 617 N.W.2d 55, 58 (Minn.2000).

Before addressing the parties' arguments regarding *R.M.H.*, we first discuss federal legislation and case law. These two sources govern the extent of permitted state regulation over matters involving Indians, including the question of when the states are permitted to enforce state law against Indians in state court. *State v. Manypenny*, 682 N.W.2d 143, 148 (Minn.2004); *see also Washington v. Confederated Tribes of the Colville Indian Reservation*, 447 U.S. 134, 154, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980).

The relevant federal act, Public Law 280, is codified as amended at 18 U.S.C. § 1162 (2006) and 28 U.S.C. § 1360 (2006). In Public Law 280, Congress expressly granted Minnesota, along with five other states, jurisdiction over certain civil and criminal matters committed on Indian reservations.[3] Public Law 280 grants the

---

ed by" tribal officers acting under this authority. Minn.Stat. § 626.90, subd. 5 (2008).

2. As an alternative to its reliance on *R.M.H.*, the State argues that the stretch of Highway 169 on which Davis was travelling when the offense was committed was state land and that the offense occurred on state land and not in Indian Country. The State argues that because the offense was committed outside of Indian Country, the state court has jurisdiction. *See Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148–49, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973) (noting that if an offense is committed outside of Indian Country, the state has the authority to enforce its laws against Indians in a nondiscriminatory fashion). Indian Country is defined as: (1) all land within the limits of any Indian reserva-

tion, including rights-of-way; (2) all dependent Indian communities within the United States; and (3) all Indian allotments to which titles have not been extinguished, including right-of-ways running through the allotments. 18 U.S.C. § 1151 (2006). We need not decide whether Davis committed his offense in Indian Country because, as set forth below, even if Davis was in Indian Country, the district court has jurisdiction. Because we do not decide this issue, Davis' motion to strike portions of the State's appendix and the State's motion to strike portions of Davis' appendix are denied as moot.

3. Public Law 280 grants Minnesota civil and criminal jurisdiction in all Indian Country within the state, except for the Red Lake Reservation.

state criminal jurisdiction over "offenses committed by or against Indians ... to the same extent that [the state] has jurisdiction over offenses committed elsewhere within the state...." 18 U.S.C. § 1162. The law grants similar jurisdiction over civil actions. 28 U.S.C. § 1360.

■■■ The United States Supreme Court has held, however, that the civil provision of Public Law 280 applies only to private civil actions and that this provision does not grant general civil/regulatory authority to the states. *Bryan v. Itasca County,* 426 U.S. 373, 384–85, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976). Accordingly, in order to determine whether Public Law 280 provides a grant of jurisdiction to the states, we examine the law the state seeks to enforce. If the law is private civil or criminal, Public Law 280 vests the state with jurisdiction. If, however, the law is classified as civil/regulatory, Public Law 280 does not provide a basis for state jurisdiction. *Bryan,* 426 U.S. at 384–86, 96 S.Ct. 2102.

■■■ In the absence of an express delegation of jurisdiction from Congress, courts engage in a preemption analysis. This analysis balances the federal interests of promoting tribal sovereignty and Indian self-governance and autonomy and any state interests in order to determine whether the state law at issue may operate. *Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Engineering,* 476 U.S. 877, 884, 106 S.Ct. 2305, 90 L.Ed.2d 881 (1986) ("[W]e have formulated a comprehensive pre-emption inquiry in the Indian law context which examines not only the congressional plan, but also 'the nature of the state, federal, and tribal interests at stake, an inquiry designed to determine whether, in the specific context, the exercise of state authority would violate federal law.'" (quoting *White Mountain Apache Tribe v. Bracker,* 448 U.S.

136, 145, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980))); *see also California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 216, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987) ("Decision in this case turns on whether state authority is pre-empted by the operation of federal law; and 'state jurisdiction is pre-empted ... if it interferes or is incompatible with federal and tribal interests reflected in federal law, unless the state interests at stake are sufficient to justify the assertion of state authority.'" (quoting *New Mexico v. Mescalero Apache Tribe,* 462 U.S. 324, 333–34, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983))).

Based on this background of federal Indian law, we considered in *State v. Stone,* 572 N.W.2d 725, 731 (Minn.1997), whether speeding and failure to provide proof of insurance were criminal or civil/regulatory offenses. We concluded that because driving is generally permitted subject to regulation, speeding and insurance laws are civil/regulatory laws. *Id.* We determined that the State did not have jurisdiction over traffic offenses committed by a member of the White Earth Band of the MCT on the White Earth Reservation. *Id.* at 731–32. Noting "the limited conditions under which the Supreme Court has allowed on-reservation jurisdiction over member Indians," we held that the State interests at stake in the enforcement of traffic offenses did "not establish[ ] extraordinary circumstances with which to overcome 'the right of reservation Indians to make their own laws and be ruled by them.'" *Id.* at 732 (quoting *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 142, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980)). Accordingly, we held that Minnesota could not enforce these traffic laws against Stone in state court. *Id.* at 731–32.

In *R.M.H.,* we reaffirmed that speeding offenses are civil/regulatory. 617 N.W.2d 55, 60 (Minn.2000). But we came to the

opposite conclusion on the question of state jurisdiction. The offense in that case was committed on the White Earth Reservation, but R.M.H. was not a member of the White Earth Band. *Id.* at 57, 61. Rather, R.M.H. was an enrolled member of the Forest County Potawatomi Community in Wisconsin. *Id.* at 57. We recognized that "Indian sovereignty is at its strongest in the context of self-governance, that is, authority over members of the governing tribe. In contrast, the strength of Indian sovereignty is less with respect to authority over nonmembers of the governing tribe, including nonmember Indians." *Id.* at 61. We held that with respect to the interests of the tribe, nonmember Indians "are, for practical purposes, the same as non-Indians." *Id.* at 63. We analyzed the federal interests in tribal self-governance, economic development and self-sufficiency, and whether there was pervasive federal regulation, and weighed those factors against the "strong" state interest in "regulating the safe flow of traffic." *Id.* at 64–65. Ultimately, we concluded that Minnesota's strong interest in regulating the flow of traffic on state-operated and maintained highways outweighed the minimal federal interests at stake, and we upheld enforcement of the state law in state court. *Id.*

### A.

With these background principles in mind, we turn to Davis' argument that our decision in *R.M.H.* has been superseded by *United States v. Lara*, 541 U.S. 193, 124 S.Ct. 1628, 158 L.Ed.2d 420 (2004). Davis' claim is based on the fact that in *R.M.H.* we relied on *Duro v. Reina*, 495 U.S. 676, 695, 110 S.Ct. 2053, 109 L.Ed.2d 693 (1990). We cited *Duro* for the premise that "tribal interest in self-governance is limited to relations between a tribe and its own members, not all Indians generally." *R.M.H.*, 617 N.W.2d at 64.

In *Duro*, the Supreme Court held that Indian tribes did not have criminal jurisdiction over nonmember Indians. 495 U.S. at 688, 110 S.Ct. 2053. In the wake of *Duro*, and prior to our decision in *R.M.H.*, Congress expressly overruled *Duro* by statute, recognizing "the inherent power of Indian tribes ... to exercise criminal jurisdiction over all Indians." Department of Defense Appropriations Act, Pub.L. No. 101–511, 104 Stat. 1856, 1892 (1991) (codified as amended at 25 U.S.C. § 1301 (2000)). The amendment that overruled *Duro* is known as the "*Duro* fix."

Several years after the amendment was enacted, the Supreme Court discussed the "*Duro* fix" in *Lara*. The defendant in *Lara* was an Indian charged with assaulting a police officer on a reservation where he lived but was not a member. 541 U.S. at 196, 124 S.Ct. 1628. Lara was prosecuted by the reservation Tribe for the offense in tribal court, but later, after he served his sentence, the United States government charged him in federal court. Lara argued that double jeopardy barred the federal government from prosecuting him. *Id.* at 197, 124 S.Ct. 1628. The Court held that, in the "*Duro* fix," Congress had recognized the "inherent" authority of the tribes to prosecute all Indians. *Id.* at 206–07, 124 S.Ct. 1628. Furthermore, Congress had the power to remove the restriction Congress had previously placed on the tribes' "inherent" power to prosecute nonmember Indians. *Id.* Because tribal authority was inherent, the Court held that the Tribe and the federal government were separate sovereigns and therefore, double jeopardy did not bar Lara's prosecution in both tribal and federal courts. *Id.* at 210, 124 S.Ct. 1628.

Davis argues that the Supreme Court's consideration of the "*Duro* fix" in *Lara* effectively overrules *R.M.H.* He also ar-

gues that our decision in *R.M.H.* is inconsistent with the view of inherent tribal authority adopted by the Supreme Court in *Lara. See also Williams v. Lee,* 358 U.S. 217, 220, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959) (recognizing that tribes have the intrinsic authority to "make their own laws and be ruled by them"). We disagree.

■ *Lara* is a federal criminal case that analyzes the application of the Double Jeopardy Clause to Indian and federal prosecutions. The Court stated that its holding that tribes have inherent authority to prosecute Indians was "a limited one" arising from already well-settled principles of Indian law. *Lara,* 541 U.S. at 204, 124 S.Ct. 1628. The Court specifically noted that its decision did not involve "interference with the power or authority of any State." *Id.* at 205, 124 S.Ct. 1628. We recognize that the interaction between Indian tribes and state government does not present a traditional federalism question because the federal government has ultimate authority over Indian jurisdiction. *See State v. Manypenny,* 682 N.W.2d 143, 148 (Minn.2004). Nevertheless, the Court's circumscription supports the conclusion that the inherent-tribal-authority language the Court used should not be interpreted to apply as broadly as Davis advocates.

Because the Court expressly limited its holding, *Lara*'s broad inherent-tribal-authority language must be read within the confines of the Court's cases that deal specifically with the question of State jurisdiction, an issue not presented in *Lara.* In *California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987), the Court recognized that it had not adopted an "inflexible *per se* rule precluding state jurisdiction over tribes and tribal members in the absence of express congressional consent." *Id.* at 214-15, 107 S.Ct. 1083. And the Court has held that States can, on occasion, regulate matters occurring on Indian reservations even in the absence of express Congressional consent. *See, e.g., Rice v. Rehner,* 463 U.S. 713, 715, 103 S.Ct. 3291, 77 L.Ed.2d 961 (1983) (upholding state authority to require a state license for on-reservation store's sale of liquor); *Washington v. Confederated Tribes of the Colville Indian Reservation,* 447 U.S. 134, 156-57, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980) (upholding state authority to collect sales and cigarette taxes from reservation sales to nonmember Indians); *Moe v. Confederated Salish and Kootenai Tribes,* 425 U.S. 463, 483, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976) (upholding state authority to collect sales tax from smokeshops on reservation).

For all of these reasons, we hold that *Lara* does not disturb our decision in *R.M.H.,* and we decline to reconsider our holding in that case.

### B.

The lower courts held that under *R.M.H.,* the district court has subject-matter jurisdiction. We turn next to consideration of Davis' challenge to these holdings.

■ In *R.M.H.,* we held that the federal and tribal interests were not strong enough to preempt enforcement of traffic laws in state court where the offender was a nonmember Indian. 617 N.W.2d at 65. Conversely, in *Stone,* citing the federal and tribal interests in allowing tribes to enforce civil/regulatory offenses committed by members of the tribe on the reservation, we held that the State could not enforce in state court its traffic laws against an Indian charged with conduct occurring on his reservation. *Stone,* 572 N.W.2d at 731-32. This case appears to fall in between the factual context of *R.M.H.* and that presented in *Stone.* Here, Davis is an enrolled member of the Leech Lake Band of the MCT, but the

offense was not committed on the Leech Lake Reservation. The offense was committed on the Mille Lacs Reservation, which, like Leech Lake, is an MCT-member reservation.

■ In challenging the lower courts' determination on the jurisdiction question, Davis seemingly contends that in order for the State to have subject-matter jurisdiction to prosecute him for the traffic offenses with which he was charged, there must be an express grant of authority from Congress, and, he argues, there is no express grant applicable to this case. Specifically, Davis argues that Public Law 280 does not apply because we held in *Stone* that the traffic offenses with which he was charged are civil/regulatory.[4] Therefore, according to Davis, there is no express grant and so the State cannot enforce its laws against him.

Supreme Court precedent does not support Davis' argument that an express grant of jurisdiction is required. *See Cabazon,* 480 U.S. at 214–16, 107 S.Ct. 1083. In *Cabazon,* California sought to apply state law regulating bingo to games operated by recognized Indian Tribes on reservations located in California. *Id.* at 204–05, 107 S.Ct. 1083. The Tribes sued to enjoin enforcement of the state regulation. *Id.* at 206, 107 S.Ct. 1083. The Court first found that the state regulation at issue did not fall within the scope of Public Law 280. *Id.* at 211–12, 107 S.Ct. 1083. The Tribes argued that because Congress had not expressly granted the State jurisdiction to regulate bingo, the State could not regulate on-reservation activity. *Id.* at 214, 107 S.Ct. 1083 ("Because the state and county laws at issue here are imposed directly on the Tribes that operate the games, and are not expressly permitted by Congress, the Tribes argue that the judg-

ment below [that precluded operation of the state law] should be affirmed without more."). The Court rejected this "inflexible *per se* rule." *Id.* at 214–15, 107 S.Ct. 1083.

Instead of a per se rule, the Court conducted a preemption analysis to determine whether the state law could operate. Under this analysis, " 'state jurisdiction is pre-empted . . . if it interferes or is incompatible with federal and tribal interests reflected in federal law, unless the state interests at stake are sufficient to justify the assertion of state authority.' " *Id.* at 216, 107 S.Ct. 1083 (quoting *New Mexico v. Mescalero Apache Tribe,* 462 U.S. 324, 333, 334, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983)). This inquiry requires that we "weigh the competing interests at stake" within the "specific factual context" presented. *R.M.H.,* 617 N.W.2d at 64.

With respect to the State interest presented here, we determined in *R.M.H.* that the State has a strong interest in ensuring traffic safety on state highways. 617 N.W.2d at 65. Davis does not contest, and we reaffirm, that the State retains that strong interest. Prosecuting Davis in state court for conduct that occurred on a state highway allegedly in violation of state traffic laws furthers this strong interest.

We next consider whether enforcing Minnesota traffic laws against Davis in state court "interferes or is incompatible with federal and tribal interests." *Cabazon,* 480 U.S. at 216, 107 S.Ct. 1083. Unlike *Cabazon,* the record in this case does not reflect that enforcement of state law would interfere with "the sole source of revenues for the operation of tribal governments." *Id.* at 218, 107 S.Ct. 1083. Moreover, there is no indication that enforcement of Minnesota traffic laws is in-

---

4. The traffic offenses at issue here—speeding and failing to provide proof of insurance—are civil/regulatory offenses. *State v. Stone,* 572 N.W.2d 725, 731 (Minn.1997).

consistent with federal pronouncements on the topic. *Compare R.M.H.*, 617 N.W.2d at 65 ("The federal government has not imposed a detailed scheme of traffic regulations on tribal reservations and has demonstrated little interest in enforcement of traffic laws on state-operated and maintained highways.") *with Cabazon*, 480 U.S. at 218, 220, 107 S.Ct. 1083 (discussing federal law that "promot[es] tribal bingo enterprises," and noting that "the current federal policy is to promote precisely what California seeks to prevent").

■■■■ But there is a well-recognized federal interest in preserving Indian self-governance and autonomy. *Cabazon*, 480 U.S. at 216, 107 S.Ct. 1083 (discussing the "congressional goal of Indian self-government, including its 'overriding goal' of encouraging tribal self-sufficiency and economic development" (quoting *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 334–35, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983))). That interest is strongest when the tribe regulates its own members. *See R.M.H.*, 617 N.W.2d at 64 (noting that "federal interest is significantly diminished where, as here, the state exercises jurisdiction over a person who is not a member of the tribe"). Davis, in essence, contends that the interest of self-governance is directly implicated here because of the governance structure of the MCT.

The dissent argues that *Stone* supports Davis' position on the question of tribal self-governance. In *Stone*, we seemed to conclude that the enforcement of state traffic laws infringed on the White Earth Band's right of self-governance. 572 N.W.2d at 732 (relying on " 'the right of reservation Indians to make their own laws and be ruled by them' " (quoting *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980))).[5] But the interest in encouraging tribal self-governance that was at issue in *Stone* was the interest of the White Earth Band in regulating the conduct of a White Earth member Indian. The analogous self-governance interest in this case rests not with MCT, as Davis and the dissent argue, but with the Mille Lacs Band where the alleged offense took place.

The Mille Lacs Band statutes make it clear that the political rights of the Band derive from "the inherent and aboriginal rights of the people of *the Band* to self-government." 2 MLBS § 1 (emphasis added). These statutes further clarify that, to the extent the MCT Constitution is the "supreme law of the Band," it is because those inherent rights have "been delegated to establish a constitutional form of government." *Id.* Importantly, the Band did not delegate to the MCT, but

**5.** The dissent argues that our decision in *Stone* requires the court to conclude that the State does not have the authority to prosecute Davis in state court for speeding because he is a member of the MCT and the alleged offense occurred within MCT territory. The dissent contends that, in *Stone*, the court held that a preemption analysis was unnecessary because exceptional circumstances did not exist. But to read *Stone* as eliminating the preemption analysis, as the dissent does, would render this aspect of our analysis in *Stone* arguably inconsistent with the preemption inquiry dictated by the Supreme Court. *See* 572 N.W.2d at 732. The Supreme Court's formulation of the preemption inquiry in *Three Affiliated*

*Tribes* does not seem to depend on a finding of exceptional circumstances. *See* 476 U.S. at 884, 106 S.Ct. 2305. And in *Cabazon*, the Supreme Court expressly stated that it had adopted a per se rule precluding state action without a balancing of interests only in the special area of state taxation. 480 U.S. at 215 n. 17, 107 S.Ct. 1083. Even in the area of the per se rule however, the Court clarified that the taxation exemption existed because "the federal tradition of Indian immunity from state taxation is very strong and that the state interest in taxation is correspondingly weak. Accordingly, it is unnecessary to rebalance these interests in every case." *Id.*

reserved to itself, the "power to maintain a Band government." And the Band government has the authority to "enact laws to preserve the sovereignty of the Band and to promote and maintain individual rights and promote the general welfare of the people of the Band." *Id.*

The Mille Lacs Band, pursuant to its own statutes, possesses a government that includes all three branches of government, whereas the MCT does not have a judicial or legislative branch. Indeed, the Band, unlike the MCT, has its own tribal court, as do all of the other six component bands of the MCT. Furthermore, Davis' conduct that allegedly violated state law also violates laws passed by the Mille Lacs Band but not the MCT. 19 MLBS § 402 (driving without insurance); 19 MLBS § 403 (speeding). Thus, if Davis were a member of the Mille Lacs Band, the interest in tribal self-governance would be directly served through the Band's enforcement of its laws against one of its members in its tribal court for conduct that occurred on the reservation. But Davis is not a member of the Mille Lacs Band and so operation of state law to Davis' on-reservation conduct does not infringe on the Band's self-governance interest to the same extent as in *Stone.*

We agree with Davis' implicit suggestion that the interests weigh differently in this case than in *R.M.H.* In *R.M.H.,* while the offense was committed on an MCT reservation (White Earth), the defendant did not claim to be a member of the MCT. 617 N.W.2d at 57. By contrast, in this case we are presented with a member of an MCT band who allegedly committed an offense on an MCT reservation. Where it has been delegated from the Mille Lacs Band, the MCT constitution is considered the "supreme law of the Band," and there are many MCT institutions that benefit all MCT members. But the MCT constitution does not possess any apparatus for law enforcement or judicial decision-making. If Davis were to be prosecuted in tribal court, the offense at issue would be governed by a Mille Lacs Band law, and would be tried in a Mille Lacs Band tribal court, areas that cannot be said to have "been delegated" by the Mille Lacs Band to the MCT.

Because the MCT has not been delegated the requisite authority to govern the offenses here, the tribal interest at issue is largely an interest in self-governance of the Mille Lacs Band.[6] The MCT itself has a significantly smaller interest in the prosecution of Davis or the enforcement of the traffic laws of the Mille Lacs Band. Thus, prosecution of Davis in state court for violation of state traffic laws committed while driving on a state highway does not interfere with and is not incompatible with the MCT's interest in self-governance.

For all of these reasons, we hold that Minnesota's traffic laws may be enforced against Davis in state court.

Affirmed.

PAGE, Justice (dissenting).

I respectfully dissent. The court's opinion today relies on the distinction between

---

**6.** The dissent contends that we have concluded "with little explanation that the MCT has no tribal interest in self-governance" and argues that the MCT must "relinquish its interest in self-governance" in order for the State to have jurisdiction. The dissent's characterization of the rights involved here is contrary to the express statutory statements of the Mille Lacs Band itself. The Band has clearly stated that it possesses the inherent right of self-governance unless the Band has chosen to delegate its rights to the MCT. 2 MLBS § 1. Based on the form of self-government chosen by the MCT member bands, it is not the MCT that must relinquish its interest in self-governance, but the Band that must acquiesce and delegate that interest to the MCT.

Indian tribes and Indian bands. Because that distinction violates the Minnesota Chippewa Tribe's (MCT) inherent right to self-governance, *McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164, 168, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973) ("Indian nations were 'distinct political communities, having territorial boundaries, within which their authority is exclusive ....'" (citing *Worcester v. Georgia*, 31 U.S. (6 Pet.) 515, 556, 8 L.Ed. 483 (1832))), and because the conduct at issue here is governed by our decision in *State v. Stone*, 572 N.W.2d 725, 728 (Minn.1997), I would reverse the court of appeals.

In *Stone*, we recognized that "Indian tribes retain 'attributes of sovereignty over both their members and their territory.'" *Id.* (quoting *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 207, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987)).[1] In determining whether Minnesota could exercise its jurisdiction "over the activities of member Indians on reservations without an express federal grant of authority," we based our decision on whether an indirect purpose to regulate non-Indians existed. *Id.* at 731. We held that, for a speeding violation, a preemption analysis was unnecessary because the state could not overcome " 'the right of reservation Indians to make their own laws and be ruled by them.'" *Stone*, 572 N.W.2d at 732 (quoting *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980)). In addition, we noted our expectation that Indian tribes would develop methods, based on the available resources of each tribe, to ensure safe driving conditions and the reasonable enforcement of traffic regulations. *Id.* at 732.

Our decision in *Stone* followed directly from a long line of United States Supreme Court cases that affirmed the sovereignty of Indian tribes. In *United States v. Mazurie*, 419 U.S. 544, 557, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975), the Court stated that "Indian tribes are unique aggregations possessing attributes of sovereignty over both their members and their territory." Thus, we start from the principle of inherent tribal sovereignty before acknowledging that "under certain circumstances a State may validly assert authority over the activities of nonmembers on a reservation, and ... in exceptional circumstances a State may assert jurisdiction over the on-reservation activities of tribal members." *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 331–32, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983) (quoted in *Cabazon*, 480 U.S. at 215, 107 S.Ct. 1083, and *Stone*, 572 N.W.2d at 731). The focus is always on the tribe as the unit of sovereign government. In *Stone*, we said that exceptional circumstances exist primarily if there is "any collateral purpose of controlling non-members." 572 N.W.2d at 732. I believe that because this case is also a traffic violation case, our decision in *Stone* is controlling: "Without exceptional circumstances, we do not reach the preemption analysis." *Id.*

The MCT is the governing unit federally recognized by the Bureau of Indian Affairs, and the individual bands such as the Leech Lake Band and the Mille Lacs Band are merely "component reservations" of the MCT. Indian Entities Recognized and Eligible To Receive Services From the United States Bureau of Indian Affairs, 73 Fed. Reg. 18,553, 18,555 (Apr. 4, 2008). Yet the court concludes with little explanation that the MCT has no tribal interest in self-governance.[2] Nor

---

1. In this case, Davis is an enrolled member of the MCT and, on the record before us, it appears that the conduct in question took place within the MCT's territory.

2. Under the Constitution of the MCT, which is the supreme law of the Mille Lacs Band, the

does the court cite any authority for the distinction it makes between Indian tribes and Indian bands. I would also note that there is no indication in this record that the MCT has no interest in self-governance or has chosen to relinquish its interest in self-governance. Absent a showing that the MCT has chosen to relinquish its interest in self-governance, it is presumptuous for us to impose such a choice on the MCT. Because we held in *Stone* that no exceptional circumstances exist requiring a preemption analysis for tribal members who are alleged to have been speeding on tribal territory and because Davis is an MCT member whose alleged speeding offense occurred within the MCT's territory,

I conclude that the state has no jurisdiction over Davis.[3]

---

purpose and function of the MCT is to "promote the general welfare of the members of the Tribe; [and] to preserve and maintain justice for its members and otherwise exercise all powers granted and provided the Indians...." MCT Const. art. I, § 3. The court cites to 2 MLBS § 1, which states, in full, that:

> All political powers of the Non–Removable Mille Lacs Bands of Chippewa Indians derive from the ... inherent and aboriginal rights of the people of the Band to self-government. *Some of these rights have been delegated to establish a constitutional form of government in which the Constitution of the Minnesota Chippewa Tribe is the supreme law of the Band.* The Band has reserved to itself, however, the power to maintain a Band government which may enact laws to preserve the sovereignty of the Band and to promote and maintain individual rights and promote the general welfare of the people of the Band.

(Emphasis added.)

The Mille Lacs Band is not a party in this case, and it has made no statements regarding any interest it might have here. The Mille Lacs Band Statute for speeding states that "[e]very person operating a vehicle of any character on a public road within the territorial jurisdiction of the Non–Removable Mille Lacs Band of Chippewa Indians shall drive in a careful and prudent manner...." 19 MLBS

§ 403. On its face, section 403 is not limited to violations by Mille Lacs Band members, and without more information, it is inappropriate for the court to limit the Band's interest in self-governance to Mille Lacs Band members.

Further, nothing in the record supports the court's assumptions that the interests in prohibiting state jurisdiction over a traffic offense were *not* delegated to establish the MCT's "constitutional form of government." Regardless of the extent of the Band's interest in self-governance, the court does not explain why that interest is at odds with, or even relevant to, the MCT's interest in promoting the general welfare of and maintaining justice for its members. Without any such assertion from either the Mille Lacs Band or the MCT, it is inappropriate for this court to define and restrict the scope of the MCT's form of government. Given our precedent in *Stone*, it is enough for me to acknowledge that the MCT is a tribe and Davis is a member of that tribe.

3. *State v. R.M.H.* provides little guidance in this case because the decision there to conduct a preemption analysis "rest[ed] heavily on the status of R.M.H. as a nonmember Indian." 617 N.W.2d 55, 63 (Minn.2000). We did, however, acknowledge in *R.M.H.* that the strength of a state's jurisdictional power over "a person on a tribal reservation varies depending on whether that person is an enrolled member of the tribe." *Id.* at 61. Here, Davis is an enrolled member of the tribe.