In re CONSERVATORSHIP OF Martha J. LUNDGAARD, Conservatee.

No. C4–89–1356.

Court of Appeals of Minnesota.

March 27, 1990.

Thomas E. Ticen, Minneapolis, for appellant.

R. Thomas Greene, Jr., Greene & Forsberg, P.A., Minneapolis, for respondent.

Considered and decided by WOZNIAK, C.J., and PARKER and SCHULTZ,* JJ.

## OPINION

PARKER, Judge.

Martha Lundgaard appeals from an order entered on July 12, 1989, appointing Thomas J. Lee, a professional conservator, as conservator of her person and estate. She contends the evidence does not support the necessary findings that she is incapacitated and in need of a conservator, that the court committed reversible error by failing to apply a less restrictive alternative than conservatorship, and that the probate court abused its discretion in appointing Lee as conservator because he did not personally

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

represent to the court that he was willing to be appointed conservator. We affirm.

## FACTS

Martha Lundgaard is 80 years old and lived alone in a duplex until she was hospitalized for injuries sustained in a fall at her home. She has remained in either a hospital or in St. Mary's Rehabilitation Center since May 1988.

Lundberg's case was referred to Ebenezer Protective Services (Ebenezer) in August 1988 and again in November 1988. The referral was made because a social worker at St. Mary's became concerned that Lundgaard was vulnerable and unable to handle her finances without the help of Marvin Attleson, a friend, and that Attleson may have influenced her to revoke the power of attorney she had assigned to her sister. Ebenezer recommended pursuing a conservatorship for her.

On March 20, 1989, Attleson filed a petition to be appointed as general conservator for Lundgaard. This petition was signed by Lundgaard as consenting to the appointment. At a hearing on April 26, 1989, the parties agreed to dismissal of the petition. Attleson has not helped Lundgaard pay bills or make bank deposits since.

On May 24, 1989, an Ebenezer social worker filed a petition seeking appointment of Thomas J. Lee as conservator of Lundgaard's person and estate. A court-ordered visitor interviewed Lundgaard at a time when she appeared quite lucid and reached no conclusion as to necessity for appointment of a conservator. Her physician filed a statement in support of conservatorship. Because of some confusion concerning who Lundgaard authorized as her attorney, two attorneys represented her at the June 21 hearing. Present at the hearing were Lundgaard, two of her sisters, three friends, a niece, Attleson, and the three witnesses for the petitioner. None of Lundgaard's relatives testified.

Two social workers and her personal physician testified that, among other things, Lundgaard has short-term memory loss; she is suffering from depression and possible senile dementia; she denies her physical incapacities; she asks for help with her finances and does not understand them; and she is inconsistent and "confusing" when making decisions. She has failed to pay her St. Mary's bill, which exceeded $10,000 at the time of the hearing. She told one person that if she were at home and there was a fire she would run out the door, even though she has not walked for more than a year.

Attleson and a former student of Lundgaard's testified in opposition to the petition. Attleson's testimony that Lundgaard could manage her own affairs with some help was contradictory to the allegation of his earlier petition to become her conservator. Her former student testified that during weekly phone conversations and monthly visits, Lundgaard did not seem confused, talked about her therapy and about trying to walk, recognized her limitations and did not discuss financial matters or ask for help in paying bills.

In her direct testimony at the hearing, Lundgaard represented that she currently resides in her duplex. The referee asked her several questions, to which she seemed unresponsive and confused.

The probate court issued findings and an order appointing a conservator. This order was issued the day of the hearing and appears to be a form order which includes all the statutory powers which may be granted a conservator of an estate and person.

## ISSUES

1. Did the probate court err in finding that Lundgaard is incapacitated and that there is no appropriate alternative to conservatorship of her estate and person?

2. Did the probate court abuse its discretion or otherwise err in appointing Lee as conservator of Lundgaard's estate and person?

## DISCUSSION

### I

◼ In reviewing findings of fact, this court may not set aside the probate court's

findings unless they are clearly erroneous, giving due regard for the probate court's determinations regarding the credibility of witnesses. Minn.R.Civ.P. 52.01; *In re Conservatorship of T.L.R.*, 375 N.W.2d 54, 58 (Minn.Ct.App.1985).

Lundgaard contends the evidence was insufficient to support the finding that she is incapacitated and complains that the trial court "did not give due consideration to the evidence in making its findings," an omission she claims amounts to reversible error. We observe that the probate court used preprinted findings which are general in nature, making review very difficult.

In 1980 the legislature made substantial amendments to the statutes governing appointment of conservators. The supreme court has noted that the thrust of that legislation was

> to make it harder to create a guardianship and, once one is created, that the powers of the guardian should be kept to the bare minimum necessary to care for the ward's needs.

*In re Guardianship of Mikulanec*, 356 N.W.2d 683, 687 (Minn.1984). According to one of the Senate sponsors of the 1980 bill, the purpose of the amendments was

> an attempt to rewrite the guardianship statute with clear definitions of what incapacity involves and some more specific statements about the powers and duties of a guardian and it expands the due process rights of a proposed ward in a guardianship hearing * * *.

*Id.* (quoting testimony of Senator Spear before Senate Subcommittee on Judicial Administration, Feb. 12, 1980).

As a result of the 1980 legislation and a subsequent amendment raising the burden of persuasion, the legislature provided that in a proceeding for the involuntary appointment of a conservator, there is a legal presumption of capacity and the burden of proof is on the petitioner to prove, by clear and convincing evidence, that the proposed conservatee is incapacitated as defined in Minn.Stat. § 525.54 (1988). Minn.Stat. § 525.551, subds. 3, 5 (1988); 1982 Minn. Laws ch. 472. In addition, the legislature has mandated that

> [i]n all cases the court *shall make specific written findings of fact*, state separately its conclusions of law, and direct the entry of an appropriate judgment or order.

Minn.Stat. § 525.551, subd. 5 (1988).

In determining that Lundgaard was incapacitated, the probate court made the following findings, inserting "her" for "his" on a preprinted order:

2. The conservatee lacks sufficient understanding or capacity to make or communicate responsible decisions concerning her person and her estate or financial decisions.

3. The conservatee has demonstrated behavior deficits evidencing inability to meet her needs for medical care, nutrition, clothing, safety, or shelter, and to manage her estate.

These findings merely restate the statutory definition of incapacitation found in Minn. Stat. § 525.54, subds. 2 and 3. Finding number 6 states that Lundgaard is incapable of exercising all the rights and powers, except for voting, which are outlined in Minn.Stat. § 525.56, subds. 3, 4 (1988).

■ It appears that several of the findings on Lundgaard's inability to meet her nutritional and clothing needs or to direct her social and recreational requirements have no support in the record presented on appeal. Thus, this court must make an independent search of the record to find evidence which rationally may support sufficient findings. We note that in family law matters, where the legislature has directed the court to consider certain statutory factors, the supreme court held that independent appellate review of the record is improper. On remand the trial court must make express findings showing that it considered the appropriate statutory factors. *Moylan v. Moylan*, 384 N.W.2d 859, 865 (Minn.1986). With some misgivings, we insert our judgment here, where it is not clear which evidence the probate court considered in support of its findings, a process which seems to fall short of the specificity mandated by statute.

■ The evidence establishes Lundgaard's incapacity to manage her estate: Until the dismissal of his petition to be appointed conservator of her estate and person, Attleson assisted Lundgaard with her finances, although she had expressed distrust of him. She vacillates in decision-making, inappropriately asks nursing assistants for help with her bills and has an unpaid bill in excess of $10,000 at St. Mary's. She is unable to maintain her real estate, which appears unkempt in comparison to the rest of the neighborhood. Her short-term memory loss causes her to forget where she is, who her doctor is, what has just been said to her, and where she has put things. It appears that the probate court evaluated this evidence in light of Lundgaard's unresponsive testimony; we find no clear error in the findings that Lundgaard is unable to manage her estate and that she has property which would be dissipated without proper management.

A closer question is presented regarding appointment of a conservator of Lundgaard's person. There is nothing in the record to indicate her present incapacity to make or communicate responsible decisions regarding nutritional needs, clothing, and social and recreational requirements. There is evidence indicating that Lundgaard lacks the capacity to make and communicate decisions concerning medical needs, shelter and safety. The petitioner presented testimony of Lundgaard's physician and two social workers who have known Lundgaard for a period of months. The court reviewed pertinent parts of her medical records [1] during a recess and presumably during testimony on specific notations in those documents.

Lundgaard does not appreciate her physical limitations. She denies her inability to walk and, as a result of this denial, she has fallen several times; she states that if there were an emergency, she could get up and run outside. Although she expresses a desire to go home, she has been unable to articulate appropriate plans for providing for her needs if she were to leave the protective care of St. Mary's.

We also note that the referee hearing this matter spoke with Lundgaard and noted that he had met her at the prior hearing in which he dismissed Attleson's petition. Lundgaard demonstrated by her testimony and her answers to the referee that she at least has periods when she is unaware of her place of residence, is out of touch with the reality of her needs and resources and is confused and confusing in her communications concerning them. Accordingly, we hold that the probate court's finding of Lundgaard's incapacity to direct her personal care is not clearly erroneous.

Finally, Lundgaard contends there is clear error in the probate court's finding that

> no appropriate alternative to conservatorship exists which is less restrictive of the conservatee's civil rights and liberties, including protective arrangements under M.S. § 525.54, subd. 7.

She claims there is no evidence in the record showing that less restrictive arrangements were considered or shown to be not appropriate.

Petitioner notes that many of the alternatives described in the statute are designed for situations where a single transaction, such as funding a trust or contracting for care, might cure the problem. Lundgaard has not proposed any alternatives and her needs are ongoing, rather than being subject to cure by a court-fashioned, single transaction.

Her claim that she can receive sufficient help from Attleson and her relatives is contrary to the evidence: no relative has come forward to offer services in such a capacity, she alternates between trusting and not trusting those who help her, she rejected her sister's holding of her power of attorney, and the court dismissed Attleson's petition to become her conservator. Attleson now refuses to help her with her

---

1. These records were summarized in part through the testimony of a social worker from St. Mary's. Although the medical documents are not in the record on appeal, we note that Lundgaard's counsel expressly agreed to their admission and immediate return after the hearing, without retention of any copies.

finances for fear he will be sued. There is evidence that less restrictive alternatives have failed and would fail again; the court did not err in determining there are no alternatives to appointing a conservator for Lundgaard.

## II

■ The probate court has broad powers in appointing a conservator. *Schmidt v. Hebeisen,* 347 N.W.2d 62, 64 (Minn.Ct.App. 1984). This court may interfere with this discretion only in the case of a clear abuse. *In re Guardianship of Stanger,* 299 Minn. 213, 215, 217 N.W.2d 754, 755 (1974); *In re Conservatorship of Kocemba,* 429 N.W.2d 302, 306 (Minn.Ct.App.1988). Where the proposed conservatee fails to nominate a conservator, the statute provides that

the court may appoint a qualified person if the court finds that the person's appointment is in the best interests of the proposed ward or conservatee.

Minn.Stat. § 525.544, subd. 2 (1988).

■ Lundgaard has not nominated a conservator. The petitioner nominated Thomas Lee, a professional conservator whom the petitioner testified she had known in a professional capacity for more than one year. We are satisfied by the evidence presented that the probate court did not err in finding Lee to be a "qualified person."

■ Lundgaard argues that the probate court abused its discretion by appointing Lee without receiving a direct indication from him that he is willing to be her conservator. This claim is without merit. Although this may have been required by previous statutory language, *see Schmidt,* 347 N.W.2d at 65, section 525.551 at subdivision 5 has since been amended and no longer requires the proposed conservator to be selected from among those people who "have indicated" to the court that they are willing to discharge the trust. 1986 Minn.Laws ch. 3, art. 3, § 7.

The probate court provided only the following preprinted finding on appointment of Lee as conservator:

9. The conservator is the most suitable and best qualified among those avail-

able and willing to discharge the trust.

We note, however, that the statute requires:

The court shall make a finding that appointment of the person chosen as guardian or conservator is in the best interests of the ward or conservatee. * * * [I]f the petition is contested, the court shall make a finding that the person to be appointed as guardian or conservator is the most suitable and best qualified person among those who are available before making the appointment. The court's finding as to the best available guardian must specifically address the reasons for the court's determination that appointment of that person is in the best interests of the ward or conservatee.

Minn.Stat. § 525.551, subd. 5 (1988). The preprinted form finding here does not address the specifics of the case, as required by the statute. There is no express finding that appointment of Lee is in Lundgaard's best interests. A review of the record, however, shows that testimony was presented that Lee was the best qualified to supervise Lundgaard's care and had been chosen from a pool of 40 persons trained by Ebenezer to be conservators.

## DECISION

■ We are reluctant to remand and dissipate an estate in conservatorship; however, we regard findings such as those presented here to be *general.* Findings which do not specifically address the necessary statutory factors, such as incapacitation, how the conservator appointed is the most suitable for the specific individual at issue, etc., do not comply with the statutory requisites for creation of conservatorships and appointment of conservators. Future use of such "general," conclusory findings will force this court to remand for findings consistent with the legislative mandate of specificity.

We affirm the probate court's finding that Lundgaard is incapacitated and in need of a conservator of her estate and

person and the appointment of Lee as conservator.

Affirmed.