**In re GUARDIANSHIP and Conservatorship OF Jeraldine J. PATES.**

No. A12–0660.

Court of Appeals of Minnesota.

Nov. 13, 2012.

Gregory R. Solum, Edina, MN; and Tyler F. Annette, Maple Grove, MN, for respondent Jeraldine Pates.

Paul W. Flower, Flower & Schutz, PLC, Brooklyn Center, MN, for respondent David Younkin.

Stephen C. Fiebiger, Stephen C. Fiebiger Law Office, Chtd., Burnsville, MN, for appellants.

Considered and decided by CHUTICH, Presiding Judge; STAUBER, Judge; and CLEARY, Judge.

## OPINION

CHUTICH, Judge.

Appellant-siblings challenge an order appointing their brother, respondent David Younkin, as conservator for their mother and granting him limited protective powers over her person. Appellants assert that their mother does not need a conservator or, alternatively, that appellant Abraham Younkin had priority and should have been appointed conservator. In addition, they claim that the district court erred by granting respondent limited protective powers and failing to require a cost bond. We affirm the district court's appointment of respondent as conservator. Because the district court erred by granting respondent limited protective powers over his mother and not requiring him to post a bond, we reverse and remand for further proceedings.

## FACTS

Respondent Jeraldine Pates is 85 years old and the mother of six adult children. Pates currently lives in a senior facility in Cambridge. The facts underlying this appeal are largely the result of animosity and discord among three of her children, appellants Abraham Younkin and Linda Towler and respondent David Younkin.

Beginning in April 2010, Pates executed a series of estate-planning documents in a relatively short period of time, raising concerns that she was being manipulated by members of her family. Pates first executed her last will and testament on April 13, 2010. The will nominated Abraham Younkin and Linda Towler as co-trustees of a residuary trust and excluded David Younkin as a beneficiary of Pates's estate. At the same time that Pates executed the will, she executed a health-care directive and power of attorney naming Abraham

Younkin and Linda Towler as her health-care agents and attorneys in fact.

In February 2011, Pates visited her physician because of issues with headaches and memory loss. The doctor conducted tests that indicated problems with "verbal memory, working memory, and calculations," and diagnosed Pates with Alzheimer's disease.

Shortly after her diagnosis, Pates, along with David Younkin and Dale Younkin, another son, visited her attorney, and Pates executed several estate-planning documents. Pates amended her will, naming David Younkin and Dale Younkin as co-trustees and including David Younkin as a beneficiary. Pates revoked her power of attorney dated April 13, 2010, and executed a new short-form power of attorney, naming David Younkin as first attorney in fact and Dale Younkin as successor attorney in fact. She also amended her health-care directive to appoint David Younkin and Dale Younkin as her health-care agents.

On July 18, 2011, Abraham Younkin took Pates to a different attorney, and she executed another series of estate-planning documents. Pates revoked her previous power of attorney, and executed a new form naming Abraham Younkin and Linda Towler as co-attorneys in fact. At the same time, Pates signed a new health-care directive, appointing Abraham and Linda as her health-care agents. In September 2011, Pates modified her will again, excluding David Younkin as a beneficiary and naming Abraham Younkin to serve as trustee of the residuary trust. The modified will also excluded Dale Younkin as a beneficiary.

In October 2011, David Younkin filed a petition in district court seeking to be appointed as a guardian and conservator for his mother. Pates, Abraham Younkin, and Linda Towler opposed the petition. The district court appointed a visitor for the matter.

At the court trial, Pates testified that she did not need a guardian, but if the court found that one was necessary, she would prefer to have Abraham Younkin appointed. She further testified that she believed all of her children were beneficiaries to her current will. The district court received excerpts from Pates's medical record, which included her diagnosis of Alzheimer's disease and her physician's recommendation that someone else supervise her finances, and the court visitor's report, which recommended appointment of a guardian and conservator.

After the trial, the district court denied David Younkin's petition for guardianship but appointed him as conservator for Pates. The court also granted David Younkin limited protective powers to select Pates's medical professionals, arrange her medical appointments, and determine her place of residence, powers not typically granted to a conservator.

Abraham Younkin and Linda Towler now appeal David Younkin's appointment as conservator. They argue that the district court erred by appointing a conservator, but that if one is necessary, the district court should have appointed Abraham Younkin. Appellants also argue that the district court erred in granting David Younkin protective powers under Minn. Stat. § 524.5–310(b) and by not requiring him to post a bond.

■ Pates filed a brief requesting the appointment of "an independent fiduciary."[1] Pates, however, did not file a notice

1. In situations where the family is divided, the district court may appoint an independent fiduciary to serve as conservator. *See Schmidt v. Hebeisen*, 347 N.W.2d 62, 64

of related appeal pursuant to Minn. R. Civ.App. P. 103.02, subd. 2 ("After one party timely files a notice of appeal, any other party may seek review of a judgment or order in the same action by serving and filing a notice of related appeal."); therefore, she is not entitled to affirmative relief from this court. *See 301 Clifton Place L.L.C. v. 301 Clifton Place Condo. Ass'n,* 783 N.W.2d 551, 561 n. 2 (Minn.App. 2010) (stating that the respondent's claim was not properly before this court because the respondent had not filed a notice of related appeal, and refusing to address the claim).

## ISSUES

I.    Did the district court err in appointing a conservator for Jeraldine Pates?

II.    Did the district court err by appointing David Younkin as conservator instead of Abraham Younkin?

III.    Did the district court err by granting David Younkin limited protective powers over Jeraldine Pates under Minn.Stat. § 524.5–310(b)?

IV.    Did the district court err by not ordering the conservator to post a cost bond?

## ANALYSIS

### I.  Appointment of a Conservator

■ "The appointment of a conservator is a matter within the district court's discretion and will not be disturbed absent a clear abuse of that discretion." *In re Conservatorship of Geldert,* 621 N.W.2d 285, 287 (Minn.App.2001), *review denied* (Minn. Mar. 27, 2001); *see also In re Conservator-*

*ship of Kocemba,* 429 N.W.2d 302, 306 (Minn.App.1988).

The district court may appoint a conservator if it finds:

(1) by clear and convincing evidence, the individual is unable to manage property and business affairs because of an impairment in the ability to receive and evaluate information or make decisions ...;

(2) by a preponderance of evidence, the individual has property that will be wasted or dissipated unless management is provided ...; and

(3) the [ ] identified needs cannot be met by less restrictive means....

Minn.Stat. § 524.5–409, subd. 1(a) (2010).

■ A reviewing court will not set aside the district court's factual findings "unless they are clearly erroneous, giving due regard for the [district] court's determinations regarding the credibility of witnesses." *In re Conservatorship of Lundgaard,* 453 N.W.2d 58, 60–61 (Minn.App. 1990); *see also* Minn. R. Civ. P. 52.01. A finding of fact is clearly erroneous "only if the reviewing court is left with the definite and firm conviction that a mistake has been made." *Fletcher v. St. Paul Pioneer Press,* 589 N.W.2d 96, 101 (Minn.1999). Appellants argue that the district court's factual findings supporting appointment of a conservator are erroneous. We disagree.

### *Impairment*

The district court found that Pates "is unable to manage property and business affairs because of an impairment in [her] ability to receive and evaluate information

(Minn.App.1984) ("Where, as here, the members of the family are divided into hostile camps it may be doubtful that a selection from either faction can well be made." (quo-

tation omitted)). Based on the record, it does not appear that the district court considered an independent fiduciary.

or make decisions, even with the use of appropriate technological assistance." The district court further specifically found that Pates's "verbal working and calculation skills are abnormal due to her memory loss and Alzheimer's disease. She has missed payment on at least one bill."

■ Pates's medical record, her physician's statement, the visitor's report, and testimony from her family support the district court's findings. In her medical record, her physician noted that Pates had "problems with verbal memory, working memory, and calculations." The physician's statement supporting David Younkin's petition diagnosed Pates with Alzheimer's disease, a progressive neuro-degenerative disease. The physician noted that Pates was forgetting to pay bills, and was forgetting conversations. The doctor opined that her condition would continue to decline over time. The court visitor's report similarly stated that "[Pates] has significant problems with her memory and needs the assistance of others in order to live safely and receive necessary services, as well as manage her finances." David Younkin, Dale Younkin, and Linda Towler also testified that Pates had missed the payment of one bill, although no adverse consequences flowed from this omission. David Younkin further testified that his mother was not always aware of whether she had paid her rent and other bills. Based on this record, the district court's finding that Pates is impaired and unable to manage her property is supported by the evidence.

### Wasted or Dissipated Property

To appoint a guardian, the district court must also find that the proposed ward has property that will be wasted or dissipated unless management is provided. Minn. Stat. § 524.5–409, subd. 1(a)(2). Here, the district court made specific factual findings about the potential for waste and dissipation:

> [Pates] has recently allowed family members to have access to and custody of a significant amount of her cash, rather than keeping it in a bank to earn interest. She has demonstrated that she is vulnerable to being taken advantage of, especially in financial matters.... It appears that she is easily influenced by individuals in decisions she has made regarding her assets, her estate planning, and regarding the sale of her home.

■ The district court's finding that Pates's funds would be dissipated is not clearly erroneous. Abraham Younkin testified that he helped his mother remove $92,000 from the bank, and was keeping the money in an undisclosed location. Pates also previously loaned her daughter Linda Towler more than $40,000 and, in 2002, Pates sued Towler and her husband to recover the funds.

The series of modifications to Pates's will, power of attorney, and health-care directive, excluding David Younkin, then including him, then excluding him again, in just over a year's time, supports the district court's finding that Pates was "easily influenced." The changes appear to have been influenced by those who took Pates to a lawyer. Pates also demonstrated a lack of understanding of these changes when she testified that she believed all of her children are beneficiaries to her will, which was incorrect because Pates's most recent modification to her will excluded David Younkin and Dale Younkin as beneficiaries. The record supports the district court's finding that the second prong of Minn.Stat. § 524.5–409, subd. 1(a), is satisfied.

### Less Restrictive Means

■ Finally, the district court found that "[n]o appropriate alternative to Con-

servatorship exists that is less restrictive of [Pates]'s civil rights and liberties including the use of appropriate technological assistance." Appellants argue that Pates's needs were being met by less restrictive means than a conservatorship because she had a valid power of attorney in place. But, the district court found that Pates was susceptible to influence by appellants, who were her attorneys in fact, indicating that the district court did not find the power of attorney to be an appropriate alternative to protect her finances. As the district court stated, "[i]t is clear that [Pates] is quite easily influenced and has taken actions that appear to be against her wishes or at least against her interests." This finding is not clearly erroneous.

On this record, we conclude that the district court did not abuse its discretion by appointing a conservator for Pates.

## II. Appointment of David Younkin as Conservator

■ Alternatively, appellants argue that if a conservator is necessary, the district court abused its discretion by not appointing Abraham Younkin as conservator. When appointing a conservator, a district court shall first consider those persons given statutory priority for such an appointment. Minn.Stat. § 524.5–413(a) (2010). Here, Abraham Younkin has priority over David Younkin because Pates testified that she would prefer to have Abraham appointed as conservator and because he is currently serving as Pates's attorney in fact. *Id.* (stating that "a person nominated as conservator by the respondent" and "an agent appointed by the respondent ... under a durable power of attorney" have priority over "an adult child"). But the district court may, in the best interests of the incapacitated person, decline to appoint a person having priority and rather appoint a person having a lower priority or no priority. Minn.Stat. § 524-.5–413(c) (2010).

The district court found that David Younkin is "the most qualified to serve as Conservator." The district court made specific findings why appointing either Abraham Younkin or Linda Towler as conservator would not be in Pates's best interests:

[Appellants'] decision to have [Pates] remove her money from the bank and then keep the money at an undisclosed location shows that they are not the best choice to serve as Conservators.... Further, [appellants] have been secretive and [appellant] Towler has been the subject of a lawsuit by [Pates] regarding an unpaid loan. There have also been many changes made to [Pates's] estate planning documents, including a change that would eliminate [David Younkin] as an heir. [Pates] appears to not have intended to eliminate [David Younkin] as an heir. It appears to the court that she was subject to some for[m] of influence from [appellants] to make such a change.

As appellants note, the district court did not explain why the estate planning changes orchestrated by David Younkin—even after Pates was diagnosed with Alzheimer's disease—did not weigh against his appointment as conservator. But the district court's appointment of David Younkin as conservator implies that the district court found him to be more credible than siblings Abraham Younkin and Linda Towler. *See Haefele v. Haefele,* 621 N.W.2d 758, 763 (Minn.App.2001) ("Where evidence relevant to a factual issue consists of conflicting testimony, the district court's decision is necessarily based on the credibility of the witnesses."), *review denied* (Minn. Feb. 21, 2001); *see also Pechovnik v. Pechovnik,* 765 N.W.2d 94, 99 (Minn.App.2009) (stating that the district

court's credibility findings can be implicit). We defer to the district court's credibility determinations. *Lundgaard*, 453 N.W.2d at 60–61.

The district court's finding that Abraham Younkin's appointment is not in Pates's best interest and that David Younkin is the most suitable and qualified person to serve as Pates's conservator is supported by the record and is not clearly erroneous. The district court did not abuse its discretion in appointing David Younkin as conservator.

### III. Limited Protective Powers

Next, appellants contend that the district court erred by granting David Younkin protective powers over Pates. The district court found that Pates was not incapacitated, but concluded that a "protective arrangement" was necessary. Citing Minn.Stat. § 524.5–310(b), a section of the guardianship statute, the district court granted David Younkin the following protective powers:

a. To select medical professionals.... This power is to be exercised only after conferring with Ms. Pates and considering her reasonable wishes[;]

b. To make and attend all medical appointments[;]

c. To make arrangements for Ms. Pates to attend all medical appointments[;] and

d. To make decisions regarding the residence of Ms. Pates after consulting with Ms. Pates and considering her reasonable wishes and providing notice to the other children of any intent to change Ms. Pates['s] residence.

Appellants contend that the district court abused its discretion by granting David Younkin these "protective powers" because Minn.Stat. § 524.5–310(b) only allows the district court to grant powers that

can be granted to a conservator under section 524.5–401. In other words, appellants assert that the district court cannot use section 524.5–310(b) to award guardianship powers without finding that the proposed ward is incapacitated, a prerequisite to appointing a guardian. As explained below, we agree that the district court exceeded its authority in granting these protective powers.

This court reviews issues of statutory interpretation de novo. *Swenson v. Nickaboine*, 793 N.W.2d 738, 741 (Minn. 2011). "When interpreting a statute, we first look to see whether the statute's language, on its face, is clear or ambiguous." *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000). If statutory language is unambiguous, this court "interpret[s] the statute's text according to its plain language." *Brua v. Minn. Joint Underwriting Ass'n*, 778 N.W.2d 294, 300 (Minn.2010). Words and phrases in statutes must be construed "according to rules of grammar and according to their common and approved usage." Minn.Stat. § 645.08(1) (2010).

The guardianship statute, Minn. Stat. § 524.5–310, states in relevant part:

(a) The court may appoint a limited or unlimited guardian for a respondent only if it finds by clear and convincing evidence that:

(1) the respondent is an incapacitated person; and

(2) the respondent's identified needs cannot be met by less restrictive means, including use of appropriate technological assistance.

(b) Alternatively, the court, with appropriate findings, *may treat the petition as one for a protective order under section 524.5–401*, enter any other appropriate order or dismiss the proceeding.

(Emphasis added.) This language is unambiguous. Under a plain reading of the statute, if the district court does not find that the proposed ward is incapacitated and that there are less restrictive means, it may convert the petition for guardianship to one for a protective order under the conservatorship statute.

Section 524.5–401 (2010) states that a court may "appoint a limited or unlimited conservator or make any other protective order provided *in this part* in relation to the estate and affairs of" the proposed ward. (Emphasis added.) The phrase "in this part" refers to the conservatorship section of the probate code, thereby limiting the district court's authority to grant protective orders. We conclude that when a district court treats a guardianship petition as one for a protective order pursuant to Minn.Stat. § 524.5–310(b), the statutory language requires the district court to treat the petition as one for conservatorship in its entirety. Thus, the powers that a district court may grant are limited to those powers allowed under the conservatorship section, and specifically Minn.Stat. § 524.5–417.

The structure and the purpose of the guardianship and conservatorship statutes support this conclusion. A conservatorship petition has a lower burden of proof than a guardianship petition. To appoint a guardian, the district court must find that the proposed ward is incapacitated, whereas to appoint a conservator, it must only find that the ward is unable to manage business affairs because she has "an impairment in the ability to receive and evaluate information or make decisions." *Compare* Minn.Stat. § 524.5–301 (2010), *with* Minn.Stat. § 524.5–401.

Accordingly, "the duties and powers of the conservator as set out by statute are more circumscribed [than] that of a guardian." 6 Steven J. Kirsch, *Minnesota Practice* § 37.6 (Supp.2012); *compare* Minn. Stat. § 524.5–313(c)(1)–(6) (2010), *with* Minn.Stat. § 524.5–417(c)(1)–(6). For example, under section 524.5–313, the district court may grant a guardian the power to "establish a place of abode," and the power to provide consent for "necessary medical or other professional care." Minn.Stat. § 524.5–313(c)(1), (4)(i). By contrast, section 524.5–417 allows a conservator to have power over an individual's estate, financial, and business affairs, but does not extend to personal issues such as place of residence or choice of medical professional. *See* Minn.Stat. § 524.5–417(c)(1)–(6) (stating the powers applicable to conservators). If a district court were allowed to grant the more expansive guardianship powers under section 524.5–310(b), it could create a limited guardianship while bypassing the guardianship statute's higher burden of proof.

■ Here, because the district court concluded that Pates is not incapacitated, it elected to treat the guardianship petition as one for a conservator. Yet, despite doing so, the district court then granted David Younkin the power to determine Pates's place of residence and the power to choose Pates's doctors and to make appointments. These powers are *not* allowed under the conservatorship statute, but are available under the guardianship statute. *Compare* Minn.Stat. § 524.5–417, *with* Minn.Stat. § 514.5–313(c)(1), (4). By granting David Younkin these limited protective powers, the district court effectively created a limited guardianship, while circumventing the requirement of finding Pates incapacitated. The district court thus erred by granting David Younkin the power to determine Pates's place of residence and provide for her medical care because such powers are not within the scope of Minn.Stat. § 524.5–401.

## IV. Cost Bond

■ Finally, appellants argue that the district court erred by not ordering David Younkin to post a bond. To address this issue, we must interpret the statute governing cost bonds for conservators. We review questions of statutory interpretation de novo. *Swenson,* 793 N.W.2d at 741. If statutory language is unambiguous, we "interpret the statute's text according to its plain language." *Brua,* 778 N.W.2d at 300.

> Minn.Stat. § 524.5–413(d) (2010) states:
> In any proceeding where the value of the personal property of the estate of the proposed protected person in the initial inventory of the estate filed by the conservator under section 524.5–419 is expected to be at least $10,000, the court *shall* require the conservator to post a bond.

(Emphasis added.) The statute is unambiguous, and the use of the word "shall" indicates that the district court is required to order a bond when the property is valued over $10,000. *See* Minn.Stat. § 645.44, subd. 16 (2010) (" 'Shall' is mandatory."). Here, Pates's personal property is valued at well over $10,000. Thus, the statute required the district court to order a bond.

David Younkin contends that Minn.Stat. § 524.5–413 is in conflict with Minn.Stat. § 524.5–415 (2010), which states:

> The court *may* require a conservator to furnish a bond conditioned upon faithful discharge of all duties of the conservatorship according to law, with sureties as it may specify.

(Emphasis added.) He thus argues that the district court properly applied section 524.5–415 and exercised its discretion in not requiring a bond.

David Younkin's argument is unpersuasive. When two statutes conflict, the specific provision governs over the general provision. *See* Minn.Stat. § 645.26, subd. 1 (2010). Here, section 524.5–413 applies specifically to conservatorships of personal property valued at $10,000 or greater, whereas section 524.5–415 applies generally to all conservatorships. While a district court has discretion to order a bond when the value of the personal property is less than $10,000, it is required by statute to do so when the property is valued at $10,000 or above.

In sum, the district court erred by not ordering conservator David Younkin to post a bond. Therefore, we remand the issue of the bond to the district court for proceedings consistent with this opinion.

## DECISION

We affirm the district court's appointment of David Younkin as conservator for his mother. Because the district court exceeded the scope of Minn.Stat. §§ 524.5–310(b) and 524.5–401, however, we reverse the district court's grant of protective powers to David Younkin to determine his mother's place of residence and to provide for her medical care. Additionally, because the district court erred by not requiring the conservator to post a bond, we reverse and remand for proceedings consistent with this opinion.

**Affirmed in part, reversed in part and remanded.**