*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0214
A14-0738**

In re the Marriage of:
Peiliang Yuan, petitioner,
Respondent,

vs.

Te Hao,
Appellant,

and

In re the Matter of:
Te Hao and o/b/o Zhaokui Yuan, petitioner,
Appellant,

vs.

Peiliang Yuan,
Respondent.

**Filed December 1, 2014
Affirmed; motion denied
Crippen, Judge***

Dakota County District Court
File Nos. 19AV-FA-13-682, 19AV-FA-12-3228

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

Peiliang Yuan, Eagan, Minnesota (pro se respondent)

Erica E. Davis, David L. Wilson, Anna Scholl, Wilson Law Group, Minneapolis, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Schellhas, Judge; and Crippen, Judge.

## UNPUBLISHED OPINION

**CRIPPEN**, Judge

In this consolidated appeal of a dissolution action and an order denying the extension of an order for protection (OFP), appellant wife challenges the district court's judgment granting respondent husband joint legal custody of the parties' minor child. She also argues that the district court abused its discretion by granting increasing unsupervised parenting time to respondent and by denying a five-year extension of the OFP. Because the district court's findings support its conclusions and are sufficiently supported by the evidence, we affirm.

## FACTS

The district court issued a judgment dissolving the marriage of appellant Te Hao and respondent Peiliang Yuan in December 2013. The parties married in China in 2011 and moved to the United States, where their child was born in June 2012. Respondent works as a financial analyst at Best Buy; appellant works as a pharmacy technician at Target.

The parties separated in October 2012 after appellant called police, alleging that respondent hit her during an argument. No domestic-abuse charges were filed, but

2

appellant obtained an ex parte OFP, and respondent later agreed to the issuance of a one-year OFP, which was issued without additional findings of fact regarding incidents of domestic abuse. Several months later, respondent pleaded guilty to disorderly conduct as a result of the October 2012 incident and agreed that the OFP could be extended for five years if the parties reached a satisfactory parenting-time arrangement. They were unable to do so. Respondent filed a dissolution action; the district court issued a temporary order granting respondent supervised parenting time and held a trial on custody and parenting-time issues.

At trial, both parties testified regarding the October 2012 incident. Respondent testified that in response to his request for a divorce, appellant told him that she wished to obtain her green card first and called his mother in China to help change his mind. He testified that the parties then argued over financial issues and that he left to de-escalate the situation, but he was met by police, who informed him that appellant had called 911 to report domestic abuse. Appellant testified that respondent pushed his hand against her neck to keep her from reaching the phone to call his mother, pushed her down, and when she followed him upstairs to ask for the phone, pushed her onto a bed and left. She stated that her mother and son were upstairs during the incident.

The parties also offered different versions of a separate incident that occurred in May 2012, when appellant was pregnant. Appellant testified that while she was mowing the lawn, respondent hit her on the head with a rake and pulled her into the garage. She testified that after she called respondent's mother, he took her to the hospital and interpreted for her, and she was afraid to say what really happened. Medical records

indicate that appellant told hospital staff that a tool box fell on her in the garage. Respondent, however, testified that appellant fell down in the garage because she was cumbersome and pregnant. Appellant also testified that respondent had slapped her during a 2011 argument.

Respondent denied that he had physically abused appellant and testified that he believed that she made up allegations of abuse in order to apply for a visa without his sponsorship. He testified that shortly after the October incident, an investigator at his workplace contacted him about a call from appellant, alleging that respondent wished to damage the office as revenge for a past demotion. That investigation resulted in no action against him. Respondent testified that he missed his child and that appellant tried to alienate the child from him. He testified that he had serious concerns about whether appellant would cooperate in making parenting decisions, but that if the district court granted joint legal custody, he believed that the parties could work together and agree on larger parenting issues. He testified that, although appellant's mother had arrived from China in 2012 to stay with the parties, appellant refused to allow his parents to see the child.

Appellant testified that she had applied for the OFP because respondent was making unreasonable demands about raising the child. She testified that she believed that his parents had seen the child during supervised visitation periods, and she did not object to their seeing the child. She testified that supervised visitation was appropriate because respondent did not know how to take care of the child. She stated that she would find it very difficult to make decisions together with respondent, but that in six months, if he

4

could control his temper and care for the child, a visitation schedule without court order would be appropriate.

The district court granted the parties joint legal custody of the child, with appellant receiving sole physical custody and unsupervised, increasing parenting time for respondent. The district court did not apply the presumption against joint custody based on domestic abuse because it found insufficient evidence to support a finding that domestic abuse occurred. The district court also declined to order a continuation of the OFP. This consolidated appeal follows.

**D E C I S I O N**

**1.**

Appellant challenges the district court's custody and parenting-time determinations, asserting that the district court's findings are inadequate or unsupported by the evidence. "Appellate review of custody determinations is limited to whether the [district] court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn. 1985). We review the district court's factual findings for clear error, giving due regard to the district court's opportunity to assess witness credibility. *Zander v. Zander*, 720 N.W.2d 360, 364 (Minn. App. 2006), *review denied* (Minn. Nov. 14, 2006). "That the record might support findings other than those made by the [district] court does not show that the court's findings are defective." *Vangsness v. Vangsness*, 607 N.W.2d 468, 474 (Minn. App. 2000). A district court's findings are clearly erroneous only if review of the record "requires the definite and firm conviction that a mistake was made." *Id.*

5

The controlling principle in a child-custody determination is the child's best interests. *Schallinger v. Schallinger*, 699 N.W.2d 15, 19 (Minn. App. 2005), *review denied* (Minn. Sept. 28, 2005). If the district court awards joint legal custody over a party's objection, it must consider 13 best-interests factors, Minn. Stat. § 518.17, subd. 1(a) (2012), and also make findings regarding (1) the parents' ability to cooperate in rearing their child; (2) methods for resolving parenting disputes and the parties' willingness to use them; (3) whether it would be detrimental to the child to give one parent sole authority; and (4) whether domestic abuse, as defined under Minn. Stat. § 518B.01 (2012), has occurred between the parents. *Id.*, subd. 2. If domestic abuse has occurred between the parents, the district court must apply a rebuttable presumption that joint custody is not in the child's best interests. *Id.* Thus, if the district court finds that domestic abuse has not occurred between the parents, that factor does not weigh against joint custody. *Id.*

Appellant challenges the district court's finding that insufficient evidence existed for a determination that domestic abuse occurred between the parties, so as to trigger the statutory presumption against joint legal custody. *See id.*; *see also* Minn. Stat. § 518B.01, subd. 2 (defining domestic abuse). The district court declined to apply that presumption, finding that, although there was no doubt that the parties had an argument in October 2012, the OFP did not contain a finding of domestic abuse, and there was conflicting testimony regarding the May 2012 incident. The district court also noted that the child was not present during either incident.

Appellant points out that, for the rebuttable presumption against joint custody to apply, she was required to establish only by a preponderance of the evidence that domestic abuse occurred. *See, e.g.*, *Johnson ex rel. Johnson v. Johnson*, 726 N.W.2d 516, 518 (Minn. App. 2007) (noting that standard as applied when dismissing ex parte OFP with prejudice). But "to warrant reversal, the district court's findings must be clearly erroneous or manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Gada v. Dedefo*, 684 N.W.2d 512, 514 (Minn. App. 2004) (quotation omitted). And "the district court is in the best position to judge the credibility of the witnesses and make determinations in the face of conflicting testimony and must be given due deference." *Braith v. Fischer*, 632 N.W.2d 716, 724 (Minn. App. 2001), *review denied* (Minn. Oct. 24, 2001).

Here, the district court was presented with differing testimony about the October and May 2012 incidents. After police investigated the October incident, appellant pleaded guilty only to disorderly conduct, stating as a factual basis for his plea that a verbal argument occurred and that the way he argued with appellant could have been offensive to her. And as the district court found, appellant's medical records from the May incident noted her contemporaneous statement that a tool box fell on her, which was inconsistent with her later version of events. This court may defer to the district court's implicit determination of credibility. *Pechnovik v. Pechnovik*, 765 N.W.2d 94, 99 (Minn. App. 2009). The district court's findings implicitly reflect that it weighed witness credibility in addressing this issue. *See In re Guardianship of Pates*, 823 N.W.2d 881, 887-88 (Minn. App. 2012) (noting that the district court's action "implies that the district

7

court found [one person] to be more credible" and deferring to this determination). Because the record contains sufficient evidence to sustain the district court's finding that domestic abuse between the parties had not been proven, the district court did not err by declining to apply the statutory presumption against joint custody.

Appellant also argues that the district court abused its discretion by granting the parties joint legal custody based on its application of the enumerated joint-custody factors in Minn. Stat. § 518.17, subd. 2. She maintains that the district court clearly erred when it found that insufficient evidence existed to show that the parties were unable to cooperate on major child-rearing issues. *See Wopata v. Wopata*, 498 N.W.2d 478, 482 (Minn. App. 1993) (stating that joint legal custody is inappropriate when the record demonstrates that the parties are unable to communicate and cooperate). But although the record reflects that the parties disagreed on day-to-day aspects of child rearing, it also shows that they were capable of co-parenting on major decisions, including the daycare facility the child would attend. Appellant also acknowledged that the child "needs his father," and recognized the suitability of increased future parenting time for respondent. Therefore, the district court's finding on this factor is not clearly erroneous.

Appellant also challenges the district court's finding that the child's grandparents may be an alternative to assist in resolving childrearing disputes, asserting that the grandparents did not appear to be impartial and noting the district court's finding that they were unavailable to help with daycare. But the record shows that the grandparents on both sides have been available by phone, and the district court's finding on their

8

availability for assistance comports with its additional finding that the parties wish to raise the child with influences of both American and Chinese cultures.

Appellant argues that the district court clearly erred by finding that it would be detrimental to the child to have only one parent with sole authority over the child's upbringing. But the evidence sufficiently supports the district court's finding that respondent's greater English proficiency would be helpful in communicating with third parties on child-related issues and also supports the district court's concern that, if appellant were granted sole legal custody, respondent would not be consulted or informed regarding major issues in the child's life. Therefore we must affirm the district court's determination that the child's best interests would be served by allowing both parents to address major parenting issues and by granting them joint legal custody.

Appellant challenges the district court's grant of unsupervised parenting time to respondent with an increasing schedule. The district court has broad discretion to decide parenting-time issues based on the child's best interests and will not be reversed absent an abuse of that discretion. *Olson v. Olson*, 534 N.W.2d 547, 550 (Minn. 1995). A district court orders parenting time that enables a parent-child relationship that is in the child's best interests. Minn. Stat. § 518.175, subd. 1(a) (2012). The district court found that although respondent's parenting time had been supervised since October 2012, there was insufficient evidence to continue those restrictions—although his inconsistent contact with the child during that time supported a gradually increased parenting-time schedule to establish a relationship with the child. Appellant maintains that respondent has only seen the child on a limited, supervised basis, and the weight of the evidence

supports a finding that he has not demonstrated an ability to care for the child on his own. But respondent testified that he had learned how to care for the child during supervised parenting-time visits, and staff notes from those visits show his appropriate interaction with the child. Thus, the district court's findings on this issue are supported by the evidence, and it did not abuse its discretion by ordering gradually increasing parenting time for respondent.

**2.**

Appellant contends that the district court abused its discretion by declining to order a five-year extension of the OFP against respondent. We review the district court's decision to grant or deny an extension of an OFP for an abuse of discretion. *See McIntosh v. McIntosh*, 740 N.W.2d 1, 11 (Minn. App. 2007) (ruling that the district court did not abuse its discretion by granting an extension of an OFP); *see also Braend ex rel. Minor Children v. Braend*, 721 N.W.2d 924, 926–27 (Minn. App. 2006) (applying abuse-of-discretion standard of review to the grant of an OFP). We review the facts in the light most favorable to the district court's findings and will reverse those findings only if we are convinced the district court made a mistake. *Id.* at 927.

A district court may grant or extend an OFP on a showing that the respondent has violated an existing or prior OFP or that the petitioner reasonably fears physical harm from the respondent. Minn. Stat. § 518B.01, subd. 6a(a)(1)-(2) (2012). Appellant argues that respondent violated the OFP by transferring marital assets to his parents in China while the OFP was in place. But the district court's finding that there was insufficient evidence that respondent violated the OFP is not clearly erroneous; the funds were

purportedly nonmarital and the transfers were made over six months before the order denying the request to extend the OFP. Appellant has presented no evidence to rebut respondent's argument that he transferred the funds to his parents to repay them for loans for his pre-marital tuition and living expenses.

Appellant also maintains that she reasonably remained in fear of physical harm from respondent. But the district court's findings that respondent has refrained from contacting appellant, and that he has done nothing to cause her to remain in fear, are not clearly erroneous. Appellant further notes that respondent agreed to an extension of the OFP in his guilty plea to disorderly conduct. But the plea agreement conditioned respondent's agreement to extend the OFP on the parties' reaching a resolution on parenting-time issues, which did not occur. The district court did not abuse its discretion by declining to extend the OFP.

**3.**

Appellant has filed a motion to strike a report included in the addendum to respondent's brief on the ground that it is outside the district court record. The report summarizes a marital/nonmarital tracing analysis performed by appellant's expert accountant, which was apparently used in settling property issues before trial. Because the record does not show that the report was entered in evidence or considered by the district court, we do not rely on it to support the district court's order denying the extension of the OFP, and we deny as moot the motion to strike that portion of the addendum to respondent's brief.

**Affirmed; motion denied.**

11